**UNITED STATES of America, Appellee,**

v.

**Ronald J. HENDRON, Defendant–Appellant.**

**No. 518, Docket 94–1235.**

United States Court of Appeals, Second Circuit.

Argued Dec. 2, 1994.

Decided Dec. 16, 1994.

Casey Donovan, New York City, for defendant-appellant.

Tanya Y. Hill, Asst. U.S. Atty., E.D.N.Y., Brooklyn, NY (Zachary W. Carter, U.S. Atty., E.D.N.Y., Susan Corkery, Asst. U.S. Atty., E.D.N.Y., of counsel), for appellee.

Before: MAHONEY, McLAUGHLIN, and HEANEY,* Circuit Judges.

PER CURIAM:

Defendant-appellant Ronald J. Hendron appeals from an amended judgment entered April 21, 1994 in the United States District Court for the Eastern District of New York, Eugene H. Nickerson, *Judge,* that convicted Hendron upon his guilty plea of conspiring, *inter alia,* to illegally import into and export out of the United States items on the United States Munitions List in violation of 18 U.S.C. § 371; unlawfully importing into the United States defense articles contained on the United States Munitions List in violation of 22 U.S.C. § 2778(b)(2); and transporting monetary instruments of more than $10,000 to a place outside of the United States without filing the report mandated by 31 U.S.C. § 5316(a)(1)(A) while violating another law of the United States, all as prohibited by 31 U.S.C. § 5322(b). Hendron was sentenced to sixty months imprisonment on the first count and sixty-three months on the second and third counts, the sentences to run concurrently, three years supervised release, and a $150 special assessment.

Undercover Customs agents posing as representatives of the Republic of Iraq contracted with Hendron to purchase 100 AK–47's from a source in Poland. Hendron had the AK–47's shipped to New York, creating false paperwork that he submitted to the Polish government and used for shipping documents that showed the end destination of the weapons to be the Philippines. Hendron also set up meetings for the agents in Frankfurt, Germany with suppliers of various other military items. Upon returning to New York after completion of the meetings to coordinate the financial aspects of the transaction arranged at Frankfurt, Hendron was arrested at Kennedy Airport. He was subsequently charged and pled guilty as previously described.

Hendron raises two sentencing issues on appeal. First, he claims that the district court improperly denied him a downward departure pursuant to USSG § 2M5.2, comment. (n. 1). Hendron also contends that the district court erred in finding that Hendron had the specific intent to obstruct justice under USSG § 3C1.1 in making false oral and written statements to the court prior to sentencing to the effect that during the sting operation he in fact had been knowingly cooperating with the United States government.

A conviction for exportation of arms, munitions, or military equipment or services without the required validated export license carries a base offense level of 22, except that a base offense level of 14 applies if "the offense involved only non-fully automatic small arms (rifles, handguns, or shotguns), and the number of weapons did not exceed ten." USSG § 2M5.2. Application Note 1 to this section provides that "[t]he base offense level assumes that the offense conduct was harmful or had the potential to be harmful to a security or foreign policy interest of the United States. In the unusual case where the offense conduct posed no such risk, a downward departure may be warranted."

---

* The Honorable Gerald W. Heaney, of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

Hendron argues that in a sting operation which the government controls, there is no "potential to be harmful" within the meaning of this provision. This issue is apparently one of first impression. Even if we agreed with Hendron's interpretation of this application note, our agreement would establish only, in the language of the note, that "a downward departure may be warranted," a determination committed to the unreviewable discretion of a sentencing court unless the court mistakenly believes that it lacks the authority to depart downwardly. *See, e.g., United States v. Whittaker*, 999 F.2d 38, 43 (2d Cir.1993). In this case, Judge Nickerson explicitly rejected Hendron's interpretation of the application note, ruling that Hendron's "knowledge and intent" were decisive, thereby effectively concluding that the application note did not authorize him to make a downward departure. We therefore regard this determination as subject to appellate review.

We agree, however, with Judge Nickerson's ruling. The sensible interpretation of the application note, in assessing an individual defendant's eligibility for the extraordinary lenience of a downward departure, is to address the normal potential of the offense conduct as perceived by that defendant. The "offense conduct" in this case included an attempt to sell items on the United States Munitions List to Iraq, a nation which the Secretary of State has designated, pursuant to 22 U.S.C. § 2780(d), to have repeatedly supported acts of international terrorism, and to which all exports are forbidden, except with special authorization, under regulations promulgated by the Department of Treasury's Office of Foreign Assets Control. *See* 15 C.F.R. § 785.4(e). Thus, arms sales to Iraq may be deemed a paradigmatic encroachment upon the "security and foreign policy interests of the United States" to whose protection the provisions of 22 U.S.C. § 2778 are directed. Hendron should not be helped in sentencing by the fortuity that the purchasers were government agents so that he could not, in fact, accomplish what he clearly intended.

We find no merit in Hendron's remaining claim that his patently false oral and written statements to the district court were not an attempt to obstruct justice because they: (1) were not made under oath; (2) were later retracted after Judge Nickerson stated that he was considering an enhancement of offense level pursuant to USSG § 3C1.1; and (3) were (as described in Hendron's appeal brief) a stating of "the facts ... through a rather distorted prism of hindsight and collateral facts" by a person with a "serious inability to distinguish between the objective, factual occurrences in this case and the fictional and/or political analysis which [Hendron] has given to these episodes." USSG § 3C1.1, comment. (n. 3(f)) specifies that "providing materially false information to a judge" is conduct to which the enhancement for obstruction of justice applies. Further, Hendron clearly manifested the specific intent to obstruct justice by expressing in his false written statement to the court the intent to "provide some insight on my pending sentencing."

The judgment of the district court is accordingly affirmed.