**UNITED STATES of America**

v.

**Thomas P. JASIN.**

**Criminal Action No. 91–602–08.**

United States District Court,
E.D. Pennsylvania.

Aug. 12, 1998.

Nicholas C. Harbist, Robert E. Goldman, Assist. U.S. Attys., for U.S.

Gaar W. Steiner, Milwaukee, WI, Jack Meyerson, Philadelphia, PA, Stephen Robert LaCheen, Philadelphia, PA, for Thomas P. Jasin.

## MEMORANDUM

DuBOIS, District Judge.

The Court writes in support of the Judgment and Sentence entered in this case on July 16, 1998. On July 27, 1998, defendant filed a Notice of Appeal to the United States Court of Appeals for the Third Circuit. This Memorandum is filed Pursuant to Local Appellate Rule 3.1.

■ This case involved extensive pre-trial motions, a five week trial, extensive post-trial motions, including a post-trial motion for acquittal, and sentencing. Neither the local rules nor the Federal Rules of Appellate Procedure required defendant to include in his Notice of Appeal a summary of the issues which he is planning to raise on appeal.[1] With unlimited time, it would be difficult for the Court to write on every imaginable issue that defendant may raise on appeal. It is impossible within the fifteen day limit set by Local Appellate Rule 3.1. Therefore, this

Memorandum is limited to the issues raised with regard to sentencing on July 16, 1998. With respect to all other issues, the Court will rely on its prior orders and the Memorandum issued July 7, 1993 covering the denial of defendant's motion for judgment of acquittal. *See United States v. Jasin,* 1993 WL 259436 at *1–2 (E.D.Pa. July 7, 1993). The background of the case is set forth in that Memorandum. *See Id.* at *1–2 (description of the Indictment and background of this case).

## I. Sentencing

On December 10, 1992, a jury found defendant guilty of a conspiracy to violate the Arms Export Control Act, 22 U.S.C. § 2778; the Comprehensive Anti–Apartheid Act, 22 U.S.C. § 5113, and sections of the money laundering statute, 18 U.S.C. § 1956–57. Sentencing was held on July 16, 1998. Prior to sentencing, on July 14, 1998, the Court held a hearing and oral argument on defendant's Emergency Motion for a Writ of Habeas Corpus Ad Testificandum and defendant's Emergency Motion to Produce Government Agent. At that hearing, defendant withdrew the Motion for a Writ of Habeas Corpus Ad Testificandum; the Court deferred ruling on the Motion to Produce a Government Agent to determine whether the agent's testimony was necessary at sentencing. Notes of Testimony ("N.T."), July 14, 1998, at 43–45. After sentencing, when it was apparent that the government agent's testimony was not needed, the Court denied

---

**1.** Federal Rule of Appellate Procedure 28 requires that an appellant include in his brief a statement of the issues presented for review. The Local Appellate Rules of the Third Circuit do not require an appellant to set forth the issues to be raised on appeal before then whereas, under Local Appellate Rule 3.1, the trial judge is given fifteen (15) days from the filing of a notice of appeal within which to submit a written opinion or a written amplification of a prior written or oral ruling. Thus, the trial judge may not know what issues will be raised on appeal when an opinion is issued under L.A.R. 3.1.

The Court notes that in other contexts appellants are required to state the issues to be raised on appeal prior to filing an appellate brief. *See* Fed R. Bank. 8006 (within ten days of filing a notice of appeal, appellant shall file a statement of issues to be raised on appeal); Fed.R.App.P.

24 (party requesting leave to proceed *in forma pauperis* from district court to appeals court must file, with the *in forma pauperis* application, a statement of issues the party intends to raise on appeal); 4th Cir. R. 3(b) ("Although a party will not be precluded from raising additional issues, counsel will make every effort to include in the docketing statement all of the issues that will be presented to the Court.").

The Court suggests that the Court of Appeals consider amending L.A.R. 3.1 to require an appellant to file, with the notice of appeal or thereafter, a notice of issues to be raised on appeal, and allow the trial court fifteen days thereafter to file an opinion. This will enable the trial court to address those issues which will be raised on appeal on which the court deems it appropriate to write an opinion or a written amplification of a prior ruling or opinion.

the Motion to Produce a Government Agent as moot.

Defendant filed Objections to the Pre–Sentence Report and a Motion for a Downward Departure on July 15, 1998. Defendant objected to the Pre–Sentence Report on the grounds that: (1) defendant's sentence was not governed by the Sentencing Guidelines, (2) if the Sentencing Guidelines did apply, the 1988 revised edition should be applied, (3) § 2M5.2 was the applicable Guideline, (4) if § 2M5.2 was the appropriate Guideline, then defendant should be assigned a base offense level of fourteen, (5) an upward adjustment under Guideline § 3B1.1 for aggravating role in the offense was not warranted, and (6) defendant was entitled to a downward adjustment under Guideline § 3E1.1 for acceptance of responsibility.

Defendant argued that a downward departure was warranted because (1) the Guidelines overstated the seriousness of the offense, (2) defendant's "failed defense" of affirmative withdrawal from the conspiracy entitled him to a departure for voluntary minimization of the offense, (3) defendant had a good faith belief that his conduct was lawful because he believed that he had government authorization for his actions and he believed that Italy, not South Africa, was the legal country of origin of the imported material, (4) defendant cooperated with law enforcement officials, (5) defendant believed he was acting to avoid a perceived greater harm, in this case to protect China and South Africa from communists "threats," (5) defendant spent five years in "pre-indictment limbo" after the last affirmative act in furtherance of the conspiracy, (6) defendant has engaged in "extraordinary public service," (7) defendant has engaged in "extraordinary self-rehabilitation," and (8) a new agenda at the Justice Department suggests that federal law enforcement officials are no longer interested in incarcerating non-violent first offenders such as defendant.

At sentencing, the Court denied the Objections to the Pre–Sentence Report for the reasons described below and those stated in the Record, and then calculated the defendant's sentence under the October 15, 1988

Sentencing Guidelines. Section 2X1.1 directs that the base offense level for a conspiracy conviction is the base offense level for the object offense. Defendant was convicted of a conspiracy involving multiple underlying offenses, so the Court, pursuant to the Guidelines, was required to determine whether the offenses were a "closely related group," see U.S.S.G. §§ 3D1.1–3D1.3 (Oct. 15, 1988), and the Court concluded that they were. Therefore, under Guideline § 3D1.3, Court applied the offense level of the most serious of the underlying offenses in the group, i.e., the offense with the highest base offense level. In this case, the violation of the Arms Export Control Act was the underlying offense with the highest base offense level.

Section 2M5.2 is the appropriate Guideline for a violation of the Arms Export Control Act. Section 2M5.2 calls for a base offense level of twenty-two if sophisticated weaponry is involved, and the Court concluded that it was.[2] Because of defendant's role in the offense as a manager or supervisor, the offense level was increased by three levels under § 3B1.1. There were no other adjustments, so defendant's total offense level was twenty-five. As defendant had no prior sentences of imprisonment and was not under probation, parole, or supervised release when he committed the offense, defendant was in criminal history category one. See U.S.S.G. § 4A1.1 (Oct. 15, 1988). In criminal history category one, with a total offense level of twenty-five, the Guideline imprisonment range is fifty-seven to seventy-one months. However, the maximum term of imprisonment under the conspiracy statute is five years. 18 U.S.C. § 371. Therefore, the Guideline imprisonment range was fifty-seven to sixty months. See N.T., July 16, 1998 at 122; U.S.S.G. § 5G1.1(a) (Oct. 15, 1988).

After entering its Guideline calculations on the record, the Court heard argument on defendant's Motion for a Downward Departure. The Court granted defendant's Motion for a Downward Departure on one ground—his good faith belief that his conduct was lawful—and denied the Motion on all the other grounds advanced by defendant. The

---

**2.** See, *infra,* Section II.C.1.

Court then sentenced defendant to, *inter alia*, twenty-four months of incarceration.

## II. Objections to the Pre–Sentence Report

### A. The United States Sentencing Guidelines Apply to This Offense

Defendant was convicted of a conspiracy which continued until September, 1989. Indictment at 14. However, defendant was only involved in the Striker missile program part of the conspiracy. Defendant's counsel argued at Sentencing that the Sentencing Guidelines do not apply to his offense because defendant's participation in the conspiracy ended in March 1987, when he affirmatively withdrew from the conspiracy through his demotion as president of ISC Technology ("ISCT"). N.T., July 16, 1998, at 25.

▇ The sentencing court has authority to determine whether "defendant's participation in the charged offense ceased before the time period alleged in the indictment had elapsed." *United States v. Bloom*, 945 F.2d 14, 17 (2d Cir.1991). In making this determination, the court should analyze whether, by a preponderance of the evidence, the facts adduced at trial show that the defendant was involved in illegal conduct after November 1, 1987, the effective date of the Sentencing Guidelines. *Id.*

▇ Merely ceasing to participate in a conspiracy is not sufficient to prove withdrawal. *United States v. Antar*, 53 F.3d 568, 582 (3d Cir.1995). To affirmatively withdraw from a conspiracy, a defendant must (1) inform law enforcement officials about the illegal conduct and his participation in it or (2) take affirmative actions which are inconsistent with the object of the conspiracy and communicate his withdrawal in a manner reasonably calculated to reach his co-conspirators. *Id.* (citing *United States v. United States Gypsum*, 438 U.S. 422, 464–65, 98 S.Ct. 2864, 57 L.Ed.2d 854). Neither occurred in this case.

Defendant did not inform law enforcement officials about the conspiracy, nor did he communicate to the other members of the conspiracy that he was no longer participating. To the contrary, in July 1987, he wrote to James Guerin, a co-conspirator, that he felt "good about being at ISC, a remarkable company." *Jasin,* 1993 WL 259436 at *10 *citing* Gov't Exh. 514. In denying defendant's Motion for Post Conviction Judgment of Acquittal in 1993, and therefore considering the evidence in the light most favorable to the government, the Court found that defendant did not withdraw from the conspiracy. *Id.* The Court reached the same conclusion at sentencing, notwithstanding the fact that defendant had a reduced burden of proof and needed only to establish withdrawal by a preponderance of the evidence.

At sentencing, the government produced evidence that the Striker Missile program part of the conspiracy continued after November 1, 1987. N.T., July 16, 1998, at 33–35, Gov't Trial Exh. 610. Because the Striker missile part of the conspiracy continued after November 1, 1987, and defendant did not affirmatively withdraw from the conspiracy, the Sentencing Guidelines apply to this offense.

### B. The October 15, 1988 Edition of the Sentencing Guidelines Apply

▇▇ The Court usually applies the Sentencing Guidelines in effect at the time of sentencing. However, to avoid *Ex Post Facto* Clause problems, the Court must apply the Guidelines in effect at the time of the offense if those Guidelines are more lenient than the current Guidelines. *See United States v. Cherry*, 10 F.3d 1003, 1014 (3d Cir.1993). In this case, § 2M5.2 in the current Guidelines provides for a base offense level of twenty-two unless the offense involved fewer than eleven non-fully automatic small arms. U.S.S.G. § 2M5.2 (1997). This was a more harsh Guideline than § 2M5.2 prior to 1990, which provided for a base offense level of fourteen unless "sophisticated weaponry is involved."[3] The Court found,

---

**3.** If "sophisticated weaponry" was involved, there is no difference in the base offense level in the versions of § 2M5.2 appearing in the 1988 and 1998 Guidelines. In that case, the base offense level would be twenty-two under both editions of the Guidelines. When the Court

with the agreement of the parties, that the last act in the Striker missile program part of the conspiracy occurred after October 15, 1988 and before November 1, 1989. N.T., July 16, 1998, at 52. Thus, the Sentencing Guidelines effective October 15, 1988 apply to this offense.

### C. Section 2M5.2 Is the Applicable Guideline for this Offense

■ Defendant argued that § 2M5.2, which applies to the "Exportation of Arms, Munitions or Military Equipment or Services Without Required Validated Export License," was not the applicable Guideline because defendant's offense involved importation, not exportation, and because defendant imported a dormant, inoperable model, not arms, munitions or military equipment. Arguing that § 2M5.2 was not "sufficiently analogous," defendant urged the Court to rely on the factors set forth in 18 U.S.C. § 3553(b), as the Sentencing Guidelines direct in such a situation, *see* Guideline § 2X5.1, and set an appropriate sentence.[4]

Appendix A to the Guidelines, the Statutory Index, specifies the guideline section or sections which are ordinarily applied to the offense of conviction. The Statutory Index in the October 15, 1988 Guidelines states that the guideline for violation of the Arms Export Control Act, 22 U.S.C. § 2778, is § 2M5.2. In the absence of an applicable offense guideline, the Court is instructed to apply the most analogous guideline. *See, Cherry,* 10 F.3d at 1012–13.

The Court concluded that § 2M5.2 was the appropriate guideline to apply as it covers violations of the Arms Export Control Act. In the alternative, the Court determined that § 2M5.2 was the most analogous guideline for sentencing defendant.

The Arms Export Control Act addresses the "control of arms exports and *imports,*" 22 U.S.C. § 2778 (emphasis added), and § 2M5.2 has been applied to offenses involving both the export and import of munitions and armaments. *See, e.g., United States v. Muthana,* 60 F.3d 1217 (7th Cir.1995) (export of ammunition); *United States v. Hendron,* 43 F.3d 24 (2d Cir.1994) (import and export of AK–47 guns); *United States v. Peters,* 978 F.2d 166 (5th Cir.1992) (export of helicopters modified for attachment of military hardware); and *United States v. Tsai,* 954 F.2d 155 (3d Cir.) *cert. denied* 506 U.S. 830, 113 S.Ct. 93, 121 L.Ed.2d 54 (1992) (export of prisms for use in missile guidance system). The imported material in this case was munitions, one of the categories of items included in § 2M5.2, and the Arms Export Control Act, the statute for which § 2M5.2 was promulgated, addresses both the import and export of such material. Therefore, although § 2M5.2 does not make specific reference to the importation of munitions, the Court concluded that § 2M5.2 was the appropriate guideline, and in the alternative, that § 2M5.2 was the most analogous guideline.

Defendant argued, in the alternative, that § 2M5.1, which applies to the evasion of export controls, was a more appropriate guideline for sentencing defendant. Section 2M5.1 was promulgated to cover violations of the Export Administration Act, 50 U.S.C.App. § 2401 *et seq., see* U.S.S.G.App. A (Oct. 15, 1988). Although the Indictment in this case charged, *inter alia,* violations of both the Arms Export Control Act and the Export Administration Act, none of the published cases in which § 2M5.1 has been applied involved the export or import of munitions or armaments. *See United States v. McKeeve,* 131 F.3d 1 (1st Cir.1997) (export of computer equipment to Libya); *United States v. Harb,* 1997 WL 173230, 111 F.3d 130 (4th Cir. April 11, 1997) (export of technological products to Iraq); *United States v. Abulfeilat,* 1996 WL 355564, 89 F.3d 846 (9th Cir. June 25, 1996)

made the determination that the October 15, 1988 Guidelines would apply because they were more lenient, the Court had not yet decided whether "sophisticated weaponry" was involved in the offense.

4. 18 U.S.C. § 3553(b) states that: "In the absence of an applicable sentencing guideline in the case of an offense other than a petty offense,

the court shall ... have due regard for the relationship of the sentence imposed to sentences prescribed by guidelines applicable to similar offenses and offenders, and to the applicable policy statements of the Sentencing Commission." 18 U.S.C. § 3553(b) (1985 and 1987 amendments).

(selling oil from Iraq); *United States v. Shetterly,* 971 F.2d 67 (7th Cir.1992) (export of microwave amplifier to West Germany). In addition, § 2M5.1 refers to exportation, not importation, and therefore is no more analogous to defendant's conduct than § 2M5.2. Accordingly, the Court rejected this argument and concluded that § 2M5.2 was the appropriate Guideline.

### 1. The Base Offense Level Is Twenty–Two Because Sophisticated Weaponry Was Involved

■ Section 2M5.2 provides for a base offense level of fourteen, unless sophisticated weaponry is involved, in which case the base offense level is twenty-two. Defendant describes the imported material as "a model made from plastic, wood and plaster" which consisted of "dormant, inoperable, non-propellant parts which were not intended for use in the actual manufacture of armaments." Defendant's Objections to Pre–Sentence Report at 5.

The burden was on the government at sentencing to prove, by a preponderance of the evidence, that "sophisticated weaponry" was involved in the offense. *Tsai,* 954 F.2d at 164. There is no exact definition of the word "sophisticated," but in making a determination under Guideline § 2M5.2, the Third Circuit has accepted its "plain and ordinary" meaning. *Id.* at 164.

In this case, the government met its burden by introducing grand jury testimony of Thomas Bain and re-introducing trial exhibits which described the Striker missile system. The Striker missile system was a long range, anti-armored attack missile, guided by laser, that could pierce 1,000 millimeters of armored steel. *See* Gov't Sent. Exh. 1, Def. Tr. Exh. 116 and Gov't Tr. Exh. 625. The material at issue in this case was a model of the missile, with model shells, but no warheads or rocket motors, imported to the United States so that problems in launching the missile could be identified and corrected. N.T., July 16, 1998, at 88–89. As such, although the Striker missile model imported to the United States was not, itself, an active weapon, it was so intertwined with the Striker, that it qualifies as "sophisticated weaponry" for the purposes of Sentencing Guideline

§ 2M5.2, and the correct base offense level is twenty-two. *See Tsai,* 954 F.2d at 165 (a component of a sophisticated weapon is sufficient for the higher base offense level in § 2M5.2).

### D. An Upward Adjustment Under § 3B1.1 For Role As A Manager or Supervisor In the Offense Was Warranted

■ Defendant argued that although he was a manager or supervisor at International Signal Corporation ("ISC"), he did not supervise five or more people who were criminally responsible for the offense conduct, and therefore, the upward adjustment of three levels for a supervisory or managerial role in the offense was inappropriate.

To meet its burden in this regard, the government needed to show that defendant was a manager or supervisor in a criminal conspiracy which involved five or more participants who were criminally responsible for, although not necessarily convicted of, the offense,. U.S.S.G. § 3B1.1 app. note 1 (October 15, 1988). In analyzing whether defendant was a manager or supervisor, the Court should consider, *inter alia,* "the exercise of decision making authority, the nature of participation in the commission of the offense, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others." U.S.S.G. § 3B1.1 app. note 3 (October 15, 1988).

The government identified many more than five people who were involved in the criminal activity at issue—the Striker Missile program, *see* N.T., July 16, 1998, at 103, and introduced trial testimony that defendant, as President of ISCT, was responsible for assembling and supervising the group of employees to work on the Striker missile program. N.T., July 16, 1998, at 103–107. Therefore, the Court found that defendant was a manager and supervisor of the Striker missile program part of the conspiracy and increased defendant's base offense level by three levels, pursuant to Sentencing Guideline § 3B1.1.

### E. A Reduction in Offense Level for Acceptance of Responsibility Under § 3E1.1 Was Not Warranted

■ Typically, a reduction in offense level for acceptance of responsibility is given when a defendant pleads guilty to the offense and acknowledges his criminal conduct. *United States v. Baird*, 109 F.3d 856, 869 *cert. denied* — U.S. ——, 118 S.Ct. 243, 139 L.Ed.2d 173 (1997). Defendant argued he was entitled to the downward departure because he acknowledged his actions, although he continued to insist that his conduct was not criminal. N.T., July 16, 1998, at 91–92.

■ The application notes to Guideline § 3E1.1 allow the departure if a defendant has gone to trial to "assert and preserve issues that do not relate to factual guilt (e.g., to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct)." U.S.S.G. § 3E1.1 app. note 2 (Oct. 15, 1988). That is not the situation in this case. Defendant has not accepted his factual guilt, and has not, in any sense, accepted criminal responsibility for his actions. In a similar case, the Court of Appeals for the District of Columbia Circuit found, in an unpublished opinion, that a downward departure was not warranted when a defendant acknowledged his conduct but argued that because of his state of mind, he was not responsible for the conduct.[5] *United States v. Sams*, 104 F.3d 1407, 1996 WL 739013, *6, 104 F.3d 1407 (D.C.Cir. Dec.9, 1996) (unpublished) *cert. denied* — U.S. ——, 118 S.Ct. 114, 139 L.Ed.2d 66 (1997); *see, also, United States v. Muhammad*, 146 F.3d 161, 1998 WL 286351 (3d Cir. June 4, 1998) (acceptance of responsibility requires genuine show of contrition). The Court agrees with the rationale of *Sams* case. Thus, a reduction in offense level for acceptance of responsibility under Sentencing Guideline § 3E1.1 was not warranted because defendant has not accepted responsi-

bility for the criminal implications of his conduct.

### III. Motion for a Downward Departure

#### A. A Downward Departure Was Warranted Based On Defendant's Good Faith Belief That His Conduct Was Lawful

The Court granted defendant's Motion for a Downward Departure based on evidence that defendant had a good faith belief that his involvement in the importation of defense items and related conduct was lawful.

A sentencing court may depart from the Sentencing Guidelines if the court finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." U.S.S.G. § 5K2.0 (Oct. 15, 1988) *quoting* 28 U.S.C. § 3553(b). While certain factors—such as race, sex, economic hardship, or drug or alcohol dependence—may never be the basis for a departure, the sentencing court has wide latitude to consider the individual circumstances of a case. *Koon v. United States*, 518 U.S. 81, 92–94, 116 S.Ct. 2035, 2044, 135 L.Ed.2d 392 (1996). The Supreme Court has endorsed a set of questions which then Chief Judge Breyer articulated for considering departures from the Sentencing Guidelines:

(1) What features of this case, potentially, take it outside the Guidelines' 'heartland' and make of it a special or unusual case?

(2) Has the Commission forbidden departures based on those features?

(3) If not, has the Commission encouraged departures based on those features?

(4) If not, has the Commission discouraged departures based on those features?

*Id.* (quoting *United States v. Rivera*, 994 F.2d 942, 949 (1st Cir.1993)).

■ In this case, defendant contended that his good faith belief that his actions were legal—both because defendant believed that the alterations to the models in Italy meant that Italy, not South Africa, was the country of origin, and because defendant be-

---

**5.** Although the *Sams* opinion is not binding, the Court finds it instructive and has used it for

guidance on this issue.

lieved the activities in which he was engaged were approved by government agencies— constitute a unique mitigating circumstances which took defendant's case from the "heartland" of cases considered by the Sentencing Commission in formulating the Sentencing Guidelines and warranted a downward departure. *See* U.S.S.G. Part A (Introduction) 1.4(b) (Oct. 15, 1988) (The Guidelines carve out a "heartland," a body of typical cases embodying the conduct that each guideline describes. Atypical cases may be treated differently). At sentencing, defense counsel introduced a number of excerpts from defendant's trial testimony in which defendant stated his belief that his actions were lawful and explained his reasons for that belief. *See* N.T., July 16, 1998, at 196–212.

 The Guidelines do not prohibit a downward departure based on a defendant's belief that his actions were lawful. In certain instances, the Guidelines encourage a downward departure based upon a person's reduced culpability. *See, e.g., Newby,* 11 F.3d at 1148 ("The illustrations given by the Commission as possible bases for a downward departure, such as coercion and duress, U.S.S.G. § 5K2.12, diminished capacity, *id.* § 5K2.13, and voluntary disclosure of offense, *id.* § 5K2.16, are all circumstances that closely relate to the culpability of the defendant. Of course these illustrations are not exhaustive, but the Commission's interpretation supports our reading of the term as requiring mitigation of guilt or culpability."). However, the Guidelines do not explicitly encourage a downward departure when a defendant believed that his actions were lawful. This is a factor not mentioned by the Guidelines so "the court must after considering the 'structure and theory of both relevant individual guidelines and the Guidelines taken as a whole,' decide whether it is sufficient to take the case out of the Guideline's heartland." *Koon,* 116 S.Ct. at 2045 *quoting Rivera* at 949.

At sentencing, defendant offered testimony that he understood it would be illegal to import an operational missile into the United States, N.T. November 24, 1992 at 16, and that he asked a government agent whether the government would be interested in assisting ISC in importing such a missile. *Id.* at 18–20. Defendant believed that the missile could be imported legally with the assistance of a government agency. *Id.* at 21–22. Defendant also testified that James Guerin, President of ISC, told him that ISC had "Washington approval" for their actions with regard to the Striker missile, *id.* at 70, and given the sensitive nature of the actions, defendant should not make further inquiries about the nature of the approval. *Id.*

The Court concluded that defendant had a good faith belief that he acted legally in relation to the importation of a model to be used to make improvements to the Striker missile system. This belief was not sufficient to constitute a defense to the crime for which defendant was convicted. However, in looking at the structure and theory of both the Guidelines and § 2M5.2, the Court concluded that defendant's good faith belief about the lawfulness of his actions constituted a mitigating circumstance which is unique to this case and which was not considered by the Sentencing Commission. That good faith belief differentiated this case from the heartland cases covered by the United States Sentencing Guidelines. *See, e.g., United States v. Newby,* 11 F.3d 1143, 1148 (3d Cir.1993) *cert. denied* 513 U.S. 834, 115 S.Ct. 111, 130 L.Ed.2d 58 (1994). Therefore, the Court granted defendant's Motion for a Downward Departure on that ground.

### B. Rejection of the Other Bases for Granting the Motion for a Downward Departure

In granting defendant's Motion for a Downward Departure based on his good faith belief that his actions were lawful, the Court rejected defendant's other proffered bases for the departure. The Court now writes on its reasons for those rejections.

### 1. The Sentencing Guidelines Overstate the Seriousness of the Offense

Defendant argued that his actions did not threaten national security and therefore he was entitled to a downward departure. In support of this position, he quoted an application note to Guideline § 2M5.2 which said that "[i]n the unusual case where the offense conduct posed no such risk [of being harmful

or had the potential to be harmful to a security or foreign policy interest of the United States], a downward departure may be warranted." U.S.S.G. § 2M5.2 app. note 1 (1997). However, this application note was added to the Sentencing Guidelines effective November 1, 1990. The Court concluded that the Sentencing Guidelines effective October 15, 1988 would be applied to this offense, and those Sentencing Guidelines include no such application note. Moreover, defendant presented no evidence at sentencing to prove that his actions did not harm a security or foreign policy interest of the United States. Therefore, this argument is without merit.

### 2. Affirmative Withdrawal

Defendant contended that his argument that he affirmatively withdrew from the conspiracy should be viewed as a "failed defense" and should be the basis for a downward departure. As described in Section II.A, the Court concluded at sentencing that defendant did not affirmatively withdraw from the conspiracy. Therefore, the Court rejected that argument as a basis for a downward departure.

### 3. Cooperative Efforts

Defendant argued that although the Court had found he was not entitled to a reduction in offense level for acceptance of responsibility, see, supra, Section II.E, his cooperation with government authorities was a basis for granting his Motion for a Downward Departure. The Court rejected that argument.

▮ Cooperation with government officials is a factor taken into consideration by the Guidelines. See U.S.S.G. 5K1.1 (Oct. 15, 1988). Under that provision, if the government concludes that defendant has provided substantial assistance in the investigation or prosecution of another person, it may file a motion asking the court to depart downward from the guideline sentencing range. Id. No such motion was filed in this case.

Defendant presented little evidence of cooperation at sentencing. That evidence did not suggest, much less establish, that defendant substantially assisted the government in the investigation or prosecution of another individual. Therefore, defendant's so-called cooperation cannot be the basis for a downward departure.

### 4. Lesser Harm

▮ Defendant also argued that he perceived that he was helping to "fortify China and South Africa against the Russian/Cuban/Angolan/Mozambiqan threats," a goal which was consistent with United States foreign policy. Mot. for Downward Dep. at 6. Section 5K2.11 of the Sentencing Guidelines allows a reduced sentence if the defendant committed the crime to avoid a perceived greater harm, in this case the threat of Communist infiltration of South Africa.

There was no credible evidence presented that defendant was acting because of a concern about any Communist threat to South Africa. To the contrary, elsewhere in the Motion for Downward Departure, defendant's counsel states that defendant "engaged in 'business as usual' without considering the true ramifications ..." Mot. for Downward Departure at 9. In addition, § 5K2.11 states that "providing defense secrets to a hostile power should receive no lesser punishment simply because the defendant believed that the government's policies were misdirected." U.S.S.G. § 5K2.11 (Oct. 15, 1988). Similarly, defendant should not receive a downward departure because he violated the law in order to, in his mind, support the government's foreign policy.

### 5. Pre–Indictment Delay

▮ The Court rejected defendant's argument that he was entitled to a downward departure because of the time that elapsed between the last acts in furtherance of the conspiracy and the return of the Indictment in this case. To warrant a downward departure for pre-indictment delay, defendant needed to prove either that his sentence had been prejudiced by the delay, see United States v. Brye,, 146 F.3d 1207, 1214, 1998 WL 318563 (10th Cir.1998), or that the delay "produced sentencing consequences so unusual and unfair that a departure would be permissible." United States v. Saldana, 109 F.3d 100, 104 (1st Cir.1997). Defendant proved neither in this case, only arguing that the likelihood of indictment added a "significant increment of punishment." That was a

not a sufficiently detrimental consequence to entitle defendant to a downward departure.

### 6. Extraordinary Public Service

Defendant argued that under Sentencing Guideline § 5H1.11, defendant's extraordinary public service should be a basis for a downward departure. The Court rejected that argument. First, § 5H1.11 was not included in the Guidelines until 1991. Second, it provides that public service is usually *not* a factor to be considered in granting a downward departure. Third, and most important, there was little evidence of public service presented at sentencing. Such evidence as was presented on this issue did not warrant a downward departure.

### 7. Extraordinary Self–Rehabilitation

Defendant contended that he had undergone self-rehabilitation to an extent not considered by the Guidelines, and he was entitled to a downward departure on that basis. *See, e.g., United States v. Sally,* 116 F.3d 76 (3d Cir.1997). To be granted a downward departure based on extraordinary self-rehabilitation, defendant must show that he is truly repentant and has achieved "real gains in rehabilitating himself and changing his behavior." *Id.* at 81–82. The only evidence offered in this regard was that defendant has "recapture[d] his ability to support his family based upon his credentials and experience in engineering." Mot. for Downward Departure at 8. This was not sufficient evidence of extraordinary rehabilitation to warrant a downward departure.

### 8. New Agenda at Justice Department

Finally, defendant argued, based on a quote from the Attorney General, that the Justice Department was no longer interested in imprisoning non-violent first offenders. This quote, offered by defendant without any further support or argument, is certainly not a basis for a downward departure.

### IV. Conclusion

For the foregoing reasons, and those stated at sentencing on July 16, 1998, the Court rejected defendant's Objections to the Pre–Sentence Report and determined that § 2M5.2 of the Sentencing Guidelines effective October 15, 1988 applied to this offense. The Court then concluded that a downward departure was warranted due to defendant's good faith belief that his conduct was legal, and the Court rejected defendant's other arguments for downward departure.