**UNITED STATES of America**

v.

**Patricia STEVENSON**

**No. CRIM.A.03–0019.**

United States District Court, E.D. Pennsylvania.

July 6, 2004.

Kathleen Rice, U.S. Attorney's Office, Philadelphia, PA, for Plaintiff.

## *MEMORANDUM*

RUFE, District Judge.

On January 9, 2003, a Grand Jury indicted Defendant Patricia Stevenson on one count of bank fraud in violation of 18 U.S.C. § 1344 and three counts of money laundering in violation of 18 U.S.C. § 1957. A Bench Warrant issued for her arrest that same day. On March 6, 2003, Stevenson was arraigned before Magistrate Judge Linda K. Caracappa, who appointed counsel from the Defender Association of Philadelphia, Federal Court Division. Stevenson entered a plea of not guilty on all counts of the indictment. Trial was scheduled for April 15, 2003. Stevenson filed unopposed motions for a continuance of trial on March 12, 2003; May 1, 2003; and August 4, 2003, all of which the Court granted, ultimately scheduling trial for January 7, 2004.

On January 7, 2004, Stevenson pleaded guilty to all charges in the indictment. The Court conducted a full guilty plea colloquy with Stevenson.[1] Stevenson of-

---

1. As required, the Court informed Stevenson of her right to contest the charges; right to be represented by counsel at all stages of the proceedings; right to a jury or judge trial; right to a unanimous guilty verdict by a jury of her peers; right not to be compelled to testify nor produce any evidence; right to be cloaked with the presumption of innocence, with the Government bearing the burden of proof of guilt beyond a reasonable doubt; and right to contest the charges and object to admissibility of evidence. The Court also informed Stevenson of the nature and essential elements of and factual basis for the charges, and that her sentence would be imposed after preparation of a presentence report, calculation of an appropriate sentence under the

fered her guilty plea knowingly, voluntarily and in conformity with the law.[2] The Court accepted the guilty plea and ordered preparation of a presentence report.[3]

On June 16, 2004, the Court held a sentencing hearing where it adopted the facts as presented in the presentence report, subject to certain revisions. The Court sentenced Stevenson to a term of imprisonment of forty-five (45) months, twenty-four (24) months of that sentence to run concurrently with the five-to-ten (5–10) year sentence imposed by the Chester County Court of Common Pleas for solicitation to commit homicide (docket no. 1806–01).[4] The Court ordered $331,634.10 in restitution to Capital Specialty Mushroom, Inc.,[5] and a $400 special assessment.

The Court ordered four years of supervised release subject to standard conditions, as well as the following special conditions: providing her probation officer access to any personal or business-related financial information; a prohibition against incurring new credit card charges or opening additional lines of credit without her probation officer's approval; no contact with the victim in this matter (Capital Specialty Mushroom, Inc.); and participation in mental health treatment.

On June 21, 2004, Stevenson filed a Notice of Appeal to the United States Court of Appeals for the Third Circuit. The Court writes this Memorandum in support of its sentence pursuant to Local Appellate Rule 3.1.[6]

## SENTENCING CALCULATION

It is undisputed that the 1998 edition of the United States Sentencing Commission Guidelines ("USSG") applies to this case. Count One (bank fraud, 18 U.S.C. § 1344) and Counts Two through Four (money laundering, 18 U.S.C. § 1957) are grouped together pursuant to USSG § 3D1.2(d) because the offense is determined by the measure of the aggregate harm. It is undisputed that the Guideline governing bank fraud determines the offense level in this case.[7]

For a violation of 18 U.S.C. § 1344, USSG § 2F1.1(a) calls for a base offense level of six (6). Pursuant to USSG § 2F1.1(b)(1)(I)-(J), eight (8) levels are added because the loss amount was more than $200,000 but less than $350,000.[8]

United States Sentencing Guidelines, and judicial consideration of the parties' arguments regarding an appropriate sentence.

2. *See* Fed.R.Crim.P. 11; *Boykin v. Alabama*, 395 U.S. 238, 243 n. 5, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).

3. *See* Fed.R.Crim.P. 32(c) (requiring submission of presentence investigation report).

4. Stevenson is currently serving an aggregated minimum term of imprisonment of thirteen and half years, imposed by the Chester County Court of Common Pleas on two separate docket numbers (docket nos. 3780–99 & 1806–01).

5. The Court ordered that Stevenson receive a credit for any seized assets or property that have already been applied to Capital Specialty Mushroom, Inc.'s monetary loss and for Capital Specialty Mushroom, Inc.'s reimbursement from other sources, including insurance

proceeds and/or a civil judgment or settlement with Mellon Bank. However, Mellon Bank may still be reimbursed for its losses.

6. Stevenson's Notice of Appeal does not include a summary of issues the she plans to raise on appeal and thus the Court can only speculate as to how it might draft a Memorandum that will assist the Court of Appeals in its review. The Court joins the suggestion of the court in *United States v. Jasin* that the Court of Appeals amend L.A.R. 3.1 to require an appellant to file concurrently with its notice of appeal a statement of issues to be raised. *See* 25 F.Supp.2d 551, 555 n. 1 (E.D.Pa.1998) (DuBois, J.), *aff'd*, 191 F.3d 446 (3d Cir.1999).

7. *See* Presentence Report ¶ 2.

8. Although the Government initially sought a nine (9) level increase because it believed the amount of loss exceeded $350,000, it with-

Pursuant to USSG § 2F1.1(b)(2)(A), two (2) levels are added because the offense involved more than minimal planning. Pursuant to USSG § 3B1.3, two (2) levels are added because Stevenson abused a position of trust (bookkeeper) that involved minimal supervision and sole responsibility for the daily finances of her employer, Capital Specialty Mushroom, Inc. In light of the foregoing, it is uncontested that Stevenson's adjusted offense level (subtotal) is eighteen (18). With the Government's consent to the application of USSG § 3E1.1(a), the offense level is reduced by two (2) for acceptance of responsibility. Accordingly, Stevenson's total offense level is sixteen (16).

Stevenson's criminal history score is ten (10). At the time of the instant offense, Stevenson was on probation for arrests of October 17, 1992 and April 5, 1993. Thus, pursuant to USSG § 4A1.1(d), two (2) points are added, bringing her total criminal history score to twelve (12). For criminal history points of 10, 11 or 12, the sentencing table at USSG Chapter 5, Part A, establishes a criminal history category of V. With an offense level of 16 and criminal history score of 10, the sentencing table provides a Guideline range for imprisonment of forty-one (41) to fifty-one (51) months. Stevenson's sentence of 45 months is in the middle of that range.

## STEVENSON'S OBJECTIONS AT SENTENCING

Stevenson raised the following issues in her Sentencing Memorandum and at the June 16, 2004 sentencing hearing.

### A. Acceptance of Responsibility— USSG § 3E1.1

█ Pursuant to USSG § 3E1.1(b), Stevenson sought a three level reduction in

the offense level for accepting responsibility. Section 3E1.1, entitled "Acceptance of Responsibility," provides:

(a) If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels.

(b) If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subjection (a) is level 16 or greater, and the defendant has assisted authorities in the investigation of his own misconduct by taking one or more of the following steps:

    (1) timely providing complete information to the government concerning his own involvement in the offense; or

    (2) timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the court to allocate its resources efficiently, decrease the offense level by 1 additional level.

Stevenson argued that, by operation of subsections (a) and (b)(2), she is entitled to a three level reduction. The Government adopted the computation set forth in the presentence report, which stated that the offense level is reduced two levels pursuant to subsection (a) only. Turning to subsection (b), Stevenson argued that because she timely notified the Government of her intention to plead guilty, she is entitled to an additional one level reduction by operation of subsection (b)(2). Accordingly, Stevenson contends, the Court must award the additional one-point reduction, and the Court is without discretion in the matter.

drew that contention at the sentencing hearing and did not object to the eight (8) level

increase. *See* 6/16/04 N.T. at 28–29.

For Stevenson to gain the benefit of subsection (b), she must also "qualif[y] for a decrease under subsection (a)." After reviewing all of the evidence presented and engaging in two separate colloquies with Stevenson at the change of plea and sentencing hearings, it is the Court's opinion that she did *not* "clearly demonstrate[ ] acceptance of responsibility for h[er] offense," as required by subsection (a). Accordingly, Stevenson does not qualify for subsection (b) because she failed to satisfy the precondition of qualification under subsection (a). Because the Government did not oppose a two-level reduction under subsection (a), the Court acceded to a two-level reduction in computing Stevenson's offense level. However, by accepting an unopposed two-level reduction, the Court does not *a fortiori* adopt the letter and consequences of the Guideline provision from which the Government's non-opposition appears to flow.

The Court is of the opinion that this is especially true where, as here, the defendant's "acceptance" of responsibility is not consistent with the thrust of the Guideline at issue. Application Note (1)(a) to USSG § 3E1.1 provides that "a defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility." During her change of plea and at sentencing, Stevenson falsely maintained that her boss, Robert Starkey, directed her illegal conduct in furtherance of his own scheme to prevent his ex-wife from obtaining any assets of Capital Specialty Mushroom, Inc. Although she admitted diverting company checks into a fraudulent account, she claimed to have split the proceeds of her fraud with Mr. Starkey. She also maintained that she witnessed Mr. Starkey dealing illegal drugs, which in turn led her to fear retribution and further drove her to

agree to participate in Mr. Starkey's alleged scheme to commit bank fraud and ruin Capital Specialty Mushroom, Inc. Yet, investigation of these allegations failed to yield convincing evidence that Mr. Starkey was involved in Stevenson's crimes. To the contrary, Mr. Starkey (and his business, Capital Specialty Mushroom, Inc.) is the victim here. Given Stevenson's unreasonable insistence on an unsubstantiated version of events, the Court cannot conclude that she "clearly demonstrates acceptance of responsibility" for her offense.

In these circumstances, the Government could have argued that Stevenson does not qualify under subsection (a) and is not entitled to *any* reduction under § 3E1.1. For whatever reason, the Government chose to forego that argument, conceding a two-level reduction because Stevenson admitted her guilt.[9] The Court did not *sua sponte* rebuff the Government's effort to abide by the terms of the plea offered by denying a two-level reduction in the offense level. At the same time, it did not permit Stevenson to convert the Government's acquiescence into qualification under subsection (a), and then bootstrap herself into qualification under subsection (b).

Stevenson's counsel also argued that even if Stevenson is not being truthful with her allegations against Mr. Starkey, it is merely the product of a firmly rooted delusion brought on by psychological and emotional trauma. Accepting this argument would establish a chaotic precedent and open the door to a cavalcade of specious arguments concerning all color and stripes of interference with a defendant's mental capacities. Stevenson may be very troubled, but she is not criminally insane.

**B. Presentence Report Content**

■ Stevenson objected to certain information included in the presentence report.

9. 6/16/04 N.T. at 7–9; Gov't's Sentencing Mem. at 2.

First, she objected to a narrative recounting Stevenson's brutal assault with a clawhammer against Roseann Puppo, Mr. Starkey's fiancé and Stevenson's replacement at Capital Specialty Mushroom, Inc.[10] Specifically, Stevenson objected to characterizing this event as "Offense Conduct" because it is not the conduct underlying the counts in the indictment. The Court agreed with Stevenson's objection, but did not entirely excise this information from the presentence report. This event was clearly related to the offense conduct as it flowed directly from Stevenson losing the position at Capital Specialty Mushroom, Inc. that enabled her to commit the bank fraud. In addition, her desire to ·conceal the fraud may have motivated the attack, so it provides additional context. Most importantly, this event certainly informs the Court's understanding of Stevenson's character and capabilities. Accordingly, the Court directed that this information be described in the presentence report as "Relevant Conduct."

■ Next, Stevenson objected to the "Victim Statement." Specifically, Stevenson sought to excise any statements unrelated to the impact of Stevenson's financial crimes, especially any impact on Ms. Puppo flowing from the clawhammer assault. The Court ruled that this information should be included because (1) it speaks to Stevenson's explosive personality, (2) it helps underline the connection between her financial crimes and her subsequent assault and solicitation to commit homicide, and (3) it gives the Court a global perspective on the harm resulting from Stevenson's financial crimes. Moreover, information concerning her crimes against Ms. Puppo and Mr. Starkey are contained in her criminal history; this· additional information merely provides additional details. In any event, this information did not prejudice Stevenson in the Court's consideration of an appropriate sentence.

Lastly, Stevenson objected to inclusion of "hurtful statements" by her mother and sister. The Court agreed that these statements should be excised. Although the Court ordered that these statements be excised from paragraph 51 of the presentence report, it appears they are still included in the most recent revision, perhaps due to some oversight by the Probation Office. The Court did not consider these statements in fashioning an appropriate sentence.[11]

## C. Concurrent Sentence

■ Stevenson asked the Court to impose a sentence to run totally concurrent with her undischarged state sentences. In support of her argument, she cited Government delay in filing the charges, the related nature of the state and federal offenses, and the time likely to be served on her state sentences. In addition, she argued that the undischarged state sen-

10. After Stevenson learned that Ms. Puppo would be replacing her at Capital Specialty Mushroom, Inc., Stevenson attacked Ms. Puppo in a locked office, repeatedly striking Ms. Puppo in the head with a clawhammer and attempting to strangle her. A coworker intervened and Stevenson fled the scene. Stevenson was sentenced to 6½ to 13 years imprisonment for aggravated assault and to a consecutive 6–12 months for possession of an instrument of crime.

While incarcerated for the clawhammer attack, an undercover state trooper taped a telephone conversation in which Stevenson stated she was willing to pay $2,000 each for the murders of Mr. Starkey and Ms. Puppo, and $10,000 for the murder of State Trooper Michael Romano, the lead investigator for the clawhammer attack. For soliciting these homicides, Stevenson was sentenced to 5 to 10 years imprisonment to run consecutively to the sentences for the clawhammer attack. See Presentence Report ¶¶ 10, 14–16, 39–40.

11. See 6/16/04 N.T. at 35–36.

tence exceeds the Federal Guideline range that would have applied had all matters been prosecuted and sentenced federally. The Court found these arguments unpersuasive.

Pursuant to USSG § 5G1.3, the Court may impose a totally concurrent, partially concurrent, or consecutive sentence "to achieve a reasonable punishment for the instant offense." [12] The Court determined that a completely concurrent sentence is inappropriate and sentenced Stevenson to a partially concurrent sentence: a term of imprisonment of forty-five (45) months, twenty-four (24) months of that sentence to run concurrently with the five-to-ten (5–10) year undischarged sentence for solicitation to commit homicide. Although the Court views Stevenson's crimes as interrelated (and thus declined the Government's suggestion that the federal sentence should run consecutively to the state sentences), the harm caused by Stevenson's bank fraud and money laundering is different in kind and quality from the harm caused by her assault against Ms. Puppo and her solicitation to commit homicide. Although Stevenson received lengthy combined state sentences, they reasonably reflect the serious and violent nature of her state crimes. Stevenson should not receive a "free ride" for her federal financial crimes merely because she received longer state sentences for related violent crimes. Some additional, incremental punishment is appropriate. [13]

## D. Downward Departure

■ In the alternative to her request for a concurrent sentence, Stevenson moved for a downward departure pursuant to USSG § 5H1.3 in light of Stevenson's "extraordinary mental and emotional circumstances," [14] her efforts to rehabilitate herself, and other unique circumstances. The Court reviewed letters, a psychiatrist's report and other materials that outline her woeful personal history and highlight her laudable efforts to better herself and others. Although the Court was impressed with Stevenson's unfortunate background and circumstances, and acknowledges that in some instances such factors may warrant a downward departure, this was not such a case. [15]

It is evident that Stevenson has reached a more stable, healthy place in her life since her incarceration. Stripped of the chaos and lawlessness that previously ruled her life, the structure and discipline imposed by prison life has apparently aided her rehabilitation. The Court believes it is this mandatory structure— as opposed to any extraordinary efforts by Stevenson— that is bringing more positive aspects of Stevenson's character to the surface. She needs a lengthy period of incarceration in order to learn to master the positive and conquer the negative. Moreover, as discussed in greater detail *supra* at Part A, Stevenson's refusal to accept full and complete responsibility for her actions suggests that her rehabilitation is actually in a rather early stage of devel-

---

**12.** *See also* 18 U.S.C. § 3584(a) (authorizing concurrent or consecutive sentences).

**13.** *See* 18 U.S.C. § 3553 (setting forth factors for the Court's consideration); *United States v. Spiers*, 82 F.3d 1274, 1281 (3d Cir.1996) (agreeing with district court that "a concurrent sentence would result in no incremental punishment at all, and would in effect give

the defendant a 'free ride' for his federal crimes").

**14.** Def.'s Sentencing Mem. at 15.

**15.** *Cf. United States v. Vela*, 927 F.2d 197, 199 (5th Cir.1991) ("Childhood abuse and neglect are often present in the lives of criminals. They always affect their mental and emotional condition.").

opment. Considering all of the circumstances of this case, Stevenson does not present the kind of "exceptional or extraordinary" example of rehabilitation efforts warranting a downward departure.[16]

### E. Supervised Release

■ Pursuant to USSG § 5D1.1 Application Note 1, Stevenson moved the Court to not impose a period of supervised release. Note 1 provides, in relevant part:

The court may depart from this guideline and not impose a term of supervised release if it determines that supervised release is neither required by statute nor required for any of the following reasons: (1) to protect the public welfare; (2) to enforce a financial condition; (3) to provide drug or alcohol treatment or testing; (4) to assist the reintegration of the defendant into the community; or (5) to accomplish any other sentencing purpose authorized by statute.

The Court imposed four years of supervised release. Although Stevenson may be subject to concurrent parole for her state convictions, the Court believes federal supervision is also appropriate to protect the public welfare and to enforce its order that Stevenson both pay restitution and maintain mental health treatment.

On two previous occasions of record, Stevenson committed similar crimes against her former employers. The presentence report states that she had "difficulty" making court-ordered restitution payments.[17] Here, a period of supervised release will enable federal authorities to supervise and enforce payment of restitution to Capital Specialty Mushroom, Inc.

Moreover, even if Stevenson is subject to the Commonwealth of Pennsylvania's conditions of parole, how the Commonwealth will manage or enforce her parole cannot be known. The Court believes Stevenson *must* receive active and adequate supervision following her release from prison, and imposing a period of federal supervised release is the only tool within this Court's authority that can accomplish that end.

## REASONS FOR THE SENTENCE

■ As noted *supra*, the Court imposed a term of imprisonment of 45 months, which is near the middle of the Guideline range of 41 to 51 months. In addition, the Court ordered that Stevenson pay $331,634.10 in restitution. To determine the appropriate sentence, the Court considered a number of factors, including the need for just punishment, deterrence of others, and Stevenson's capability for rehabilitation.[18]

Even before her association with Capital Specialty Mushroom, Inc., Stevenson had developed a history of abusing her employment to steal from her employers. Despite two convictions for theft by deception for which she was still serving a period of probation, Stevenson quickly took advantage of her position at Capital Specialty Mushroom, Inc. and employed substantially the same scheme to steal hundreds of thousands of dollars. Stevenson's fraud against Capital Specialty Mushroom, Inc. was the natural result of nurturing and expanding her criminal will and activity. When caught, Stevenson failed to take complete responsibility for her actions, clinging to her unsubstantiated claims

---

**16.** *United States v. Sally*, 116 F.3d 76, 81 (3d Cir.1997); *see also United States v. Yeaman*, 248 F.3d 223, 228–29 (3d Cir.2001) (learning Spanish, tutoring other prisoners, participating in prison choir, and behaving as a "model

prisoner" do not support a finding of "extraordinary rehabilitation").

**17.** *See* Presentence Report ¶¶ 36–38.

**18.** *See* 6/16/04 N.T. at 76–82.

against Mr. Starkey as co-conspirator. For continuing in this criminal pattern, a substantial punishment was warranted. The Court does not believe that the lengthy term of imprisonment imposed for attacking Ms. Puppo and soliciting three homicides is alone sufficient; some additional, incremental punishment is warranted.

It appears that Stevenson has made little or no progress in paying restitution to the victims of her state financial crimes, Glenmore Glass, Inc. and Pearl Systems. This further underscores the need to impose a period of supervised release, that will ensure that Stevenson cannot repeat that failure with respect to Capital Specialty Mushroom, Inc. The Court expects Stevenson to pay restitution in this matter.

As evidenced by her complete lack of rehabilitation following convictions for similar financial crimes, Stevenson's road to rehabilitation will be long. A lengthy term of imprisonment will ensure that process may occur in a safe environment. Perhaps more importantly, that process must occur in an environment that is free of the kind of financial opportunity and temptation that caused Stevenson to victimize Capital Specialty Mushroom, Inc., and Glenmore Glass, Inc. and Pearl Systems before that.

The Court took note of Stevenson's abusive upbringing, but did not find a sufficient basis upon which to depart downward. However, her unfortunate circumstances did persuade the Court to impose a term of imprisonment near the middle of the Guideline range, as opposed to a term of imprisonment near the upper limit of the range.

Stevenson possesses an explosive personality, and she is a proven threat to society. She needs a lengthy, sustained period of mental health treatment and evaluation before she is released back into society.

For all of the foregoing reasons, the Court believes its sentence was appropriate.