

1998 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-4-1998

# United States v. Muhammad

Precedential or Non-Precedential:

Docket 97-5230

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1998

Recommended Citation

"United States v. Muhammad" (1998). *1998 Decisions.* Paper 130.
http://digitalcommons.law.villanova.edu/thirdcircuit_1998/130

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1998 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed June 4, 1998

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 97-5230

UNITED STATES OF AMERICA

v.

RABB MUHAMMAD, a/k/a WILLIAM ALLISON
a/k/a JEROME CAMP,

     Appellant

On Appeal From the United States District Court
For the District of New Jersey
(D.C. Crim. No. 95-cr-00645)

Argued: January 23, 1998

Before: BECKER and STAPLETON, Circuit Judges, and
POLLAK, District Judge.*

(Filed June 4, 1998)

     LORIS M. KOCH, ESQUIRE
      (ARGUED)
     Assistant Federal Public Defender
     800 Hudson Square, Suite 350
     Camden, NJ 08102

Attorney for Appellant

_____

* Honorable Louis H. Pollak, United States District Judge for the Eastern
District of Pennsylvania, sitting by designation.

FAITH S. HOCHBERG, ESQUIRE
United States Attorney
ALLAN TANANBAUM, ESQUIRE
  (ARGUED)
Assistant United States Attorney
970 Broad Street
Newark, NJ 07102

Attorneys for Appellee

OPINION OF THE COURT

BECKER, Circuit Judge.**

Rabb Muhammad was convicted for failure to appear for trial in violation of 18 U.S.C. S 3146.1 On appeal, he contends that the district court improperly applied the relevant guideline provision, U.S.S.G. S 2J1.6 (1995). That guideline sets a base offense level for failure to appear, see S 2J1.6(a)(2), which is then increased in relation to the maximum penalty for the offense for which the defendant failed to appear. See S 2J1.6(b)(2)(A) (nine level increase if underlying offense punishable by death or fifteen or more years imprisonment); S 2J1.6(b)(2)(B) (six level increase if underlying offense is punishable by five to fifteen years imprisonment). At the time he fled, Muhammad had been charged with being a felon in possession of a firearm, in violation of 18 U.S.C. S 922(g)(1). Although this offense is typically punishable by a maximum of ten years in prison, see 18 U.S.C. S 924(a)(2), the penalty is escalated to a fifteen year minimum where the defendant's criminal history is particularly egregious, see 18 U.S.C. S 924(e).

Since Muhammad's underlying offense was punishable by two different penalty provisions depending upon his criminal history, an argument arose at sentencing as to which provision Muhammad faced when he jumped bail.

_____

** Honorable Edward R. Becker, United States Circuit Judge for the Third Circuit, assumed Chief Judge status on February 1, 1998.

1. Muhammad was sentenced to 51 months imprisonment, followed by three years supervised release.

2

Resolution of this question had great practical significance for Muhammad since it meant the difference between a six or nine level enhancement under S 2J1.6(b)(2). Rejecting Muhammad's continuing objection that only a six-level enhancement was proper under S 2J1.6(b)(2)(B), the district court ruled that the fact that Muhammad's indictment referenced 18 U.S.C. S 924(e) constituted notice to Muhammad at the time he jumped bail of the government's intent to seek a punishment of at least fifteen years if he was convicted under S 922(g)(1), and, on that basis, elevated Muhammad's base offense level by nine points pursuant to U.S.S.G. S 2J1.6(b)(2)(A).

We conclude that the district court correctly enhanced Muhammad's base offense level under S 2J1.6(b)(2), and adopt, with explanation, the "notice based" approach that it employed in reaching this conclusion. In addition, Muhammad contends that the district court erred in failing to reduce his offense level based on "acceptance of responsibility." Since we find no clear error in the district court's determination that this reduction should not apply, we reject that argument as well.

I.

On November 27, 1995, a federal grand jury returned a two-count indictment against Muhammad. Relevant to this appeal is the first count, which charged Muhammad with possession of a firearm and ammunition which had traveled in interstate commerce while having been previously convicted of at least three violent felonies or serious drug offenses punishable by imprisonment exceeding one year, in violation of 18 U.S.C. SS 922(g)(1) and 924(e).2 Section 922(g)(1) is a substantive firearms offense, which makes it unlawful for a person who has been convicted of a crime punishable by a term exceeding one year to possess a firearm. Section 922(g)(1) does not contain its own penalty provision; to find the punishment associated with violating
_____

2. Count two charged Muhammad with knowingly possessing a firearm which had been transported in interstate commerce and which had the manufacturer's serial number obliterated, altered or removed, in violation of 18 U.S.C. S 922(k).

3

the section, as we must here, one looks to 18 U.S.C. SS 924(a)(2) and S 924(e). Section 924(a)(2) provides that a violation of S 922(g)(1) is punishable by up to ten years in prison, but under S 924(e), the Armed Career Criminal Act, that penalty is increased to a minimum of fifteen years imprisonment if the defendant has three previous convictions for violent felonies or serious drug offenses. See 18 U.S.C. S 924(e)(1). In the instant case, the government believed that the S 924(e) enhancement was applicable to Muhammad and specifically referenced that provision in the indictment along with a list of the seven previous felony convictions that it believed qualified Muhammad for enhanced sentencing.

At his arraignment, Muhammad pleaded not guilty to all counts, and on December 13, 1995, the district court held a bail hearing, after which Muhammad was released on a $20,000 surety bond, subject to twenty-four hour house arrest and electronic monitoring. Muhammad subsequently failed to appear for his scheduled trial. When a pretrial services officer went to Muhammad's residence, he discovered that Muhammad's electronic monitoring device had been cut and that Muhammad was missing. Two weeks later, Muhammad was arrested by the FBI at a Newark, New Jersey boarding house. The grand jury subsequently returned a superseding indictment charging Muhammad with the original two counts plus an additional count for failure to appear in court as required by the conditions of his release ("bail jumping"), in violation of 18 U.S.C. S 3146.

Muhammad was tried before a jury on all three counts. Prior to trial, he offered to plead guilty to the bail jumping count. The government rejected the offer, informing Muhammad that its policy was not to accept a plea to one count of an indictment if it was required to pursue at trial other counts to which a defendant would not plead. On the first day of the trial, however, the district court informed Muhammad that it would accept his guilty plea regardless of the government's policy. The court also ruled that it would allow the government to offer proof of the bail jumping, even if Muhammad pleaded guilty to the charge, as evidence of "consciousness of guilt" on thefirearms charges. As a result of this ruling, Muhammad asserts, he

decided not to enter a guilty plea since the plea would not have affected the evidence against him.

At trial, Muhammad did not actively dispute the bail jumping charge. He testified as to the facts of his bail jumping and did not cross-examine the government's witnesses on this issue. He testified that he failed to appear because he was scared and did not believe that he would receive a fair trial on the gun possession charge due to his criminal record. The jury returned a guilty verdict on the bail jumping charge, but was unable to reach a verdict on the two firearms charges and, ultimately, a mistrial was declared. A second trial on those counts also resulted in a deadlock and a mistrial. In the wake of this second mistrial, the district court granted the government's motion to dismiss the two firearms charges.

The district court sentenced Muhammad pursuant to U.S.S.G. S 2J1.6, which is the applicable guideline for bail jumping. Section 2J1.6 provides for a base offense level of six for all failures to appear that are not failures to appear for reporting for service of a sentence. See U.S.S.G. S 2J1.6(a)(2). This base offense level is then enhanced in proportion to the statutory maximum penalty authorized for the "underlying offense" which is defined as "the offense in respect to which the defendant failed to appear." U.S.S.G. S 2J1.6 cmt. 1. Specifically, the guideline provides in relevant part that if:

> the underlying offense is --
>
> (A) punishable by death or imprisonment for a term of fifteen years or more, increase by 9 levels; or
>
> (B) punishable by a term of imprisonment of five years or more, but less than fifteen years, increase by 6 levels . . .

U.S.S.G. S 2J1.6(b)(2). The district court elevated Muhammad's base offense level by nine points pursuant to S 2J1.6(b)(2)(A) since it determined that the indictment's reference to 18 U.S.C. S 924(e) constituted notice to Muhammad at the time he jumped bail of the government's intent to seek a punishment of at least fifteen years if he were convicted under S 922(g)(1).3  Muhammad now appeals that determination.

_____

3. At sentencing, neither the parties nor the court referred to Count 2 of the original indictment, which charged a violation of 18 U.S.C. S 922(k).

The district court had jurisdiction over this federal criminal case under 28 U.S.C. S 3231. We have jurisdiction over this appeal pursuant to 28 U.S.C. S 1291 and 18 U.S.C. S 3742.

II.

Application of U.S.S.G. S 2J1.6 is, as a general matter, straightforward: the defendant's base offense level is set by the guideline, and is then increased, according to clear rules, in proportion to what the defendant's "underlying offense" was "punishable by." Since the defendant's "underlying offense" can be found by looking to the indictment and the maximum statutory penalty associated with that offense by reference to the United States Code, there is usually little room for error. But this case deviates from the norm, for the underlying offense with which Muhammad was charged, 18 U.S.C. S 922(g)(1), has two penalty provisions associated with it, and thus in order to calculate his sentence for bail jumping, we must first decide the proper method for determining what an underlying offense is "punishable by" in such a situation.4 This question is one we have not previously had occasion to address.

A.

Muhammad contends that the phrase "punishable by" should be interpreted to require that the defendant in fact be subject to the penalty provision. Thus, he contends that

_____

Presumably, this is because S 922(k) offenses are punishable by prison terms of up to only five years. See 18 U.S.C. S 924(a)(1)(B). While U.S.S.G. S 2J1.6(b)(2) does not explicitly instruct courts to look to the underlying offense with the highest available punishment when a defendant jumps bail with respect to more than one crime punishable by different terms, such an approach is sensible, and Muhammad does not challenge it here.

4. Muhammad was charged in Count 1 of his indictment with violations of both 18 U.S.C. S 922(g)(1) and S 924(e). Since the latter provision is a sentencing enhancement provision, rather than a substantive offense, see United States v. Hawkins, 811 F.2d 210, 220 (3d Cir. 1987), the underlying offense that Muhammad faced was S 922(g)(1).

6

the district court should not have been permitted to look to S 924(e) in determining his sentence since, even had he been convicted on the S 922(g)(1) charge, he would not have actually qualified for sentencing under S 924(e) because he did not have the requisite number and type of qualifying convictions. While the government contests Muhammad's assertion that he would not have qualified for sentencing under S 924(e), it also argues that such a determination is irrelevant to Muhammad's sentence for bail jumping. We agree. Muhammad's view, in addition to being fraught with practical difficulties,[5] is foreclosed by the text of U.S.S.G. S 2J1.6, which makes clear that a defendant's bail jumping sentence should be increased in relation to the potential punishment that he faced at the time he jumped bail rather the actual punishment that he received. See United States v. Sanchez, 995 F.2d 468, 470 (3d Cir. 1993) (Section 2J1.6 not rendered unreasonable by the fact that it requires the district court to enhance the base offense level according to the maximum sentence for the underlying offense, without regard for the possibility that the defendant might actually receive a sentence of less than the statutory maximum).[6]

_____

5. Whether the S 924(e) enhancement applies is often a complex question that requires the district court to sift through a great deal of evidence. In addition, the decision to apply the enhancement is often appealed to this Court. The practical difficulties are particularly apparent in a case such as this one where the defendant was never convicted of the underlying S 922(g)(1) offense and the question of whether S 924(e) actually applied never arose. Since, as a general matter, no one can say with any degree of certainty what penalties will be imposed prior to the drafting of a presentence report and the holding of a sentencing hearing, adoption of Muhammad's approach would require the court to conduct an extended, mock sentencing procedure on counts for which no conviction has, or indeed may ever be, obtained.

6. See also United States v. Kincaid, 959 F.2d 54, 56-57 (6th Cir. 1992) (using maximum possible sentence to compute S 2J1.6 enhancement is not arbitrary and capricious though probable sentence based on guidelines is much lower); United States v. Williams, 932 F.2d 1515 (D.C. Cir. 1991) (upholding enhancement based on maximum sentence of original underlying offense, although Williams was convicted only of misdemeanor); United States v. Harper, 932 F.2d 1073 (5th Cir. 1991) (approving enhancement based on possible sentence although defendant had already received a much lower sentence before failure to appear); United States v. Agbai, 930 F.2d 1447 (10th Cir. 1991) (approving enhancement based on five year maximum although Agbai had received two concurrent ten-month sentences).

7

Indeed, a defendant need not be convicted of the underlying offense in order for S 2J1.6(b)(2) to apply. See United States v. Williams, 932 F.2d 1515, 1516-17 (D.C. Cir. 1991); United States v. Nelson, 919 F.2d 1381 (9th Cir. 1990).

Muhammad also argues that where an underlying offense is punishable by both a generic penalty provision and a heightened penalty provision, only the generic provision should be counted for purposes of sentencing under the bail jumping guideline. Thus, he submits that since his underlying offense, 18 U.S.C. S 922(g)(1), is as a generic matter (i.e. without the S 924(e) enhancement), punishable by a prison term of no more than ten years, see 18 U.S.C. S 924(a)(2), only the six point enhancement under U.S.S.G. S 2J1.6(b)(2)(B) should be applicable. Again, Muhammad's argument ignores the fact that S 2J1.6(b)(2) explicitly directs the district court to determine the proper enhancement by reference to what the defendant's underlying offense is potentially "punishable by." Muhammad does not contest that, at least in certain circumstances, a violation of 18 U.S.C. S 922(g)(1) is punishable by the 15 year minimum found in 18 U.S.C. S 924(e).

B.

Having rejected the approaches advanced by Muhammad, we are left with the question of how to construe the phrase "punishable by." The government offers both a "categorical" and a "notice-based" approach to the application of U.S.S.G. S 2J1.6 where the underlying offense is associated with more than one penalty provision. Under the categorical approach, the phrase "punishable by" is interpreted as referring to the highest of any and all statutory penalties, regardless of the particular circumstances presented by individual cases. Thus, every defendant charged with a S 922(g)(1) offense would be said to face a potential penalty of life-imprisonment under S 924(e) for purposes of U.S.S.G. S 2J1.6(b)(2), since that maximum is higher than the alternative ten year maximum in S 922(a)(2).

This categorical approach is, in essence, an extension of the approach taken where the underlying offense has a single penalty provision, and it comports with the

8

requirement that the defendant's bail jumping sentence be increased in proportion to the potential punishment that he faced when he jumped bail. Nonetheless, we reject it since its adoption would undermine a fundamental assumption that serves to rationalize the bail jumping guideline's tiered enhancement structure -- that, at the time the defendant fled, he was aware of the potential penalty that he faced.

In Sanchez, supra, we rejected a challenge to the reasonableness of the guideline, concluding that:

> In our view, the bail jumping guideline is eminently reasonable in that it takes into account the likelihood that a defendant who is facing a more serious charge with a longer possible jail term has a greater incentive to flee than a defendant facing a less serious charge with a shorter possible jail term. As the D.C. Circuit noted in United States v. Williams, 932 F.2d 1515, 1517 (D.C. Cir. 1991), absent this enhancement structure, "the penalty for failure to appear will not provide an accused with sufficient incentive to face the judicial music."

995 F.2d at 469-70 (citation omitted). As the Sanchez panel recognized, the tiered enhancement structure set forth in S 2J1.6(b)(2) is predicated on the fact that there is a logical relationship between the length of a possible sentence on a charged offense and the length of the sentence imposed for evading a court appearance for that offense. This relationship arises from the fact that the more serious the potential punishment faced by a defendant, the more serious his punishment for jumping bail on that offense should be in order adequately to deter him. This deterrence rationale is, in turn, founded on the concept of notice since, in order for the "greater incentive to flee" to be more than theoretical, the defendant must have been at least constructively aware of the potential punishment associated with his underlying offense at the time he jumped bail.

Of course, neither the Sanchez panel nor the guideline explicitly mentions notice. Where the defendant's underlying offense is punishable by a single penalty provision, the listing of that offense in the indictment provides the defendant with constructive notice of the

9

maximum penalty that he faces. But in cases such as the present one, in which more than one penalty provision exists for a given offense, simply indicting the defendant on the underlying charge will not provide him with any notice as to whether the government is seeking application of the heightened penalty provision.

The centrality of the concept of notice to the rationality of the enhancement structure of U.S.S.G. S 2J1.6 leads us to conclude that where more than one penalty provision is associated with an offense, in order to trigger a penalty for purposes of the phrase "punishable by" as used in S 2J1.6(b)(2), the government must notify the defendant that it will seek that penalty provision prior to the time the defendant jumps bail, whether by way of indictment or otherwise.7 Where the government fails to invoke any penalty provision, it will be assumed, for purposes of the bail jumping guideline, that it has chosen to pursue the provision which carries the lesser maximum penalty. It is only by placing this limited burden on the government that we can be certain that a defendant such as Muhammad was at least constructively aware that the government intended to seek a heightened penalty when he jumped bail, and thereby ensure that application of the bail jumping guideline in such cases remains faithful to the notice principle underpinning its proportional enhancement structure.

C.

Applying this "notice" approach to Muhammad, we find that since he was informed by the government in his indictment that it intended to seek the 18 U.S.C.S 924(e) sentencing enhancement, the district court was entitled to enhance his base offense level for bail jumping by nine levels pursuant to U.S.S.G. S 2J1.6(b)(2)(A). In reaching this conclusion, we reject Muhammad's argument that it is unfair to apply the notice-based approach in this case since the government's decision to seek the S 924(e) enhancement was so baseless that he did not actually believe at the time

_____

7. The government informs us that it often alleges the applicability of S 924(e) in a separate notice.

10

that he fled that he would, in fact, qualify for the enhancement.

While we can imagine that there may be some point at which the government's notice that it intends to seek a penalty enhancement such as S 924(e) would be so baseless as to make it unfair to permit the defendant's sentence to be enhanced under S 2J1.6, this is not such a case. The record reveals that the government had a plausible basis for seeking the enhancement.8 Further, to the extent that Muhammad is arguing that application of the bail jumping guideline requires a subjective inquiry into the defendant's state of mind when he fled, we reject this argument. The bail jumping guideline rests on a presumption that a defendant's decision to flee is predicated, at least in part, on the severity of the penalty that the government intends to seek. While this presumption may not prove true in every case, it is certainly rational, and we see nothing in either the language of the guideline nor its underlying principles that suggests that the defendant's subjective state of mind is in any way relevant to the guideline's application.

III.

Muhammad also challenges the district court's refusal to award him a reduction in his sentence based on acceptance of responsibility. Under the sentencing guidelines, a defendant is entitled to a two-level reduction to his calculated offense level if he "clearly demonstrates acceptance of responsibility for his offense." U.S.S.G. S 3E1.1(a). We review a district court's factual determination with respect to acceptance of responsibility under a clearly erroneous standard. See United States v. Ceccarani, 98 F.3d 126, 129 (3d Cir. 1996); see also U.S.S.G. S 3E1.1 cmt. 5 ("The sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review."). The defendant bears the burden of establishing by a preponderance of the evidence that he is entitled to the

_____

8. We leave for another day the question of what remedy would be appropriate where the government had no basis to seek a penalty enhancement such as 18 U.S.C. S 924(e).

11

sentence reduction. See United States v. Rodriquez, 975
F.2d 999, 1008 (3d Cir. 1992).

The reduction for acceptance of responsibility generally
does not apply to a defendant "who puts the government to
its burden of proof at trial by denying the essential factual
elements of guilt, is convicted and only then admits guilt
and expresses remorse." U.S.S.G. S 3E1.1, cmt. 2. However,
in "rare situations a defendant may clearly demonstrate an
acceptance of responsibility for his criminal conduct even
though he exercises his constitutional right to a trial." Id.
Such a situation

> may occur, for example, where a defendant goes to trial
> to assert and preserve issues that do not relate to
> factual guilt (e.g., to make a constitutional challenge to
> a statute or a challenge to the applicability of a statute
> to his conduct). In each such instance, however, a
> determination that a defendant has accepted
> responsibility will be based primarily upon pre-trial
> statements and conduct.

Id.

The district court based its decision to deny Muhammad
the reduction on its conclusion that "nothing in
Muhammad's pretrial conduct . . . amounts to an
affirmative acceptance of responsibility." Rather, the court
found that Muhammad had engaged in "some tactical
maneuvering" to gain a benefit (non-admission of the
evidence related to the bail jumping offense) in return for a
guilty plea. The court also found that, by going to trial,
Muhammad "presented the government not only with the
need to prove its case, but also with the risk of jury
nullification."[9]

Muhammad directs his arguments on this appeal almost
exclusively to refuting the district court's conclusions that
he forced the government to prove its case and that there
was a risk of nullification. We do not address these
arguments, or the government's forceful responses, since
they miss the essential basis of the district court's decision.
_____

9. The government views Muhammad's statement to the jury that he fled
because he was "scared" as a plea for jury sympathy.

That is, even were we to conclude that Muhammad did not
actively contest his guilt, and that he in no way courted
nullification, he still would not be entitled to the reduction
absent a showing that he affirmatively accepted
responsibility for his conduct. See e.g. United States v.
Portillo-Valenzeula, 20 F.3d 393, 394 (10th Cir. 1994) ("the
question is not whether [the defendant] actively asserted
his innocence but whether he `clearly demonstrate[d]'
acceptance of his guilt.") (quoting U.S.S.G.S 3E1.1(a)).
Clearly demonstrating acceptance of responsibility requires
a genuine show of contrition. See United States v. Royer,
895 F.2d 28, 30 (1st Cir. 1990).

The only evidence of remorse that Muhammad directs us
to is that he offered to plead guilty and that he took the
stand and admitted the essential facts underlying the bail-
jumping charge. As to the latter, we see nothing in
Muhammad's testimony that amounts to an affirmative
statement of remorse or contrition, and we refuse to so
conclude as a matter of law on the basis that Muhammad,
once he waived his fifth amendment privilege, fulfilled his
obligation not to perjure himself. As to Muhammad's
arguments regarding his offer to plead guilty, we see no
basis for disturbing the district court's conclusion that
Muhammad's offer amounted to "tactical maneuvering."
This is especially true in light of the fact that the district
court specifically informed Muhammad that he could plead
guilty without the government's consent, and thus, had
Muhammad truly been remorseful, nothing prevented him
from pleading guilty to the bail jumping charge.

After reviewing the record, we find nothing in the facts
that leads us to conclude that the district court clearly
erred in determining that this was not one of the "rare
instances" in which an acceptance of responsibility
reduction is warranted despite the defendant's decision to
go to trial.

The judgment of the district court will be affirmed.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

13