

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-24-2009

# USA v. Gregory Jones

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-2638

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"USA v. Gregory Jones" (2009). *2009 Decisions.* Paper 1144.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1144

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 08-2638

———————

UNITED STATES OF AMERICA,

v.

GREGORY JONES,
also known as "G"

Gregory Jones,
                    Appellant

———————

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Crim. No. 06-cr-00367-1)
District Judge: Eduardo C. Robreno

———————

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 20, 2009

Before: RENDELL and GARTH, <u>Circuit Judges</u>,
and VANASKIE, <u>District Judge</u>*

(Filed: June 24, 2009)

———————

OPINION OF THE COURT

———————

_____

    *The Honorable Thomas I. Vanaskie, United States District Judge for the Middle
District of Pennsylvania, sitting by designation.

VANASKIE, <u>District Judge</u>.

Gregory Jones, who pled guilty to conspiracy, credit card fraud, identity fraud and aggravated identity fraud in violation of 18 U.S.C. §§ 2, 371, 1029(a)(1), (a)(3), and (a)(4), 1028(a)(5), and 1028A, appeals his sentence of 144 months in prison. Jones assails the District Court's calculation of his offense level for purposes of ascertaining the advisory guideline imprisonment range. Jones also contends that the District Judge who sentenced Jones' co-conspirator after Jones was sentenced erred in denying him access to the transcript of the co-conspirator's sentencing proceeding, thereby impairing his ability to claim unreasonable disparity in the sentence he received. Because we discern no error in the District Court's calculation of Jones' offense level and find that a different judge's denial of access to the co-conspirator's sentencing transcript is not properly before us, we will affirm the District Court's judgment and sentence.

I.

As we write only for the parties, who are familiar with the factual context and the procedural history of the case, we will set forth only those facts necessary to our analysis.

Commencing in 2002, Jones and Brian Morgan undertook the manufacture and sale of counterfeit credit cards and identification documents. Morgan contributed most of the capital for the operation and focused on fabricating credit cards. Jones knew how to set up the software and operate the equipment, and concentrated on manufacturing counterfeit IDs and checks. They equally divided most of the day-to-day expenses and

2

shared raw materials, facilities, and overhead costs. They also jointly set $100 as the minimum price for counterfeit credit cards and jointly ordered "skimmers," i.e., devices that can extract account numbers and other data from the magnetic strip on a credit card. On occasion, they shared credit card numbers.

Jones and Morgan manufactured the illicit credit cards from several locations in Philadelphia. At some point between 2003 and 2005, Jones and Morgan moved their enterprise to 1913 Alden Street, Philadelphia. On February 7, 2006, a search warrant was executed on the Alden Street address and Morgan was arrested. Authorities confiscated thousands of credit card numbers, multiple computers, scanners, an embosser, credit card receipts from numerous businesses, images of credit card holograms, tipping foil, and hundreds of completed counterfeit credit cards and drivers licenses. In total 6,631 distinct (non-duplicative) credit card numbers were found.

Undeterred, Jones continued the manufacturing of bogus credit cards in an apartment at 4158 Girard Avenue, Philadelphia. On May 25, 2006, law enforcement officers executed a search warrant at the Girard Avenue apartment. Upon entering the apartment, the officers saw Jones in the process of printing counterfeit credit cards, using the same type of equipment and materials seized from the Alden Street location. One hundred forty-two credit card numbers were found at the Girard Avenue address.

On March 15, 2007, Jones entered a plea of guilty to all counts of the indictment. On March 27, 2007, Jones submitted to a probation officer who was conducting the

presentence investigation a "Net Worth Statement." The "instructions for completing Net Worth Short Form Statement" informed Jones that he was required to provide "a complete listing of all assets you own or control as of this date." He was specifically directed to list all real estate holdings. Jones wrote that he owned three properties with a total value of approximately $240,000, none of which included real estate located at 5359 Grays Avenue, Philadelphia.

Although Jones did inform the probation officer that he owned a bar at the Grays Avenue address, it was only some time later that the government ascertained that Jones also owned the real property at this location. The investigation disclosed that Jones bought the property in November of 2005, but did not record the deed evidencing his ownership until March 27, 2007, the same date he submitted the financial worksheet that omitted any reference to this particular property. The probation officer recommended that Jones receive a two-level enhancement for obstruction of justice and that he be denied a three-level reduction in his offense level for acceptance of responsibility due to the failure to list his ownership interest in the Grays Avenue property.

The probation officer further recommended that the base offense level of 6 be increased by 18 premised upon a loss of $500 for each of the 6,700 "access devices" seized from the Alden Street and Girard Avenue locations.[1] Finally, the probation officer

---

[1]The sentencing guidelines provide that the amount of loss "shall be not less than $500 per access device." U.S.S.G. § 2B1.1, cmt n.3(F)(i). The probation officer multiplied
(continued...)

4

proposed a two-level enhancement for use of sophisticated means in the commission of the offense in accordance with U.S.S.G. § 2B1.1(b)(9)(C), plus a four-level enhancement under U.S.S.G. § 2B1.1(b)(2), based upon a finding that the offense involved 50 or more victims. This yielded a total offense level of 32, which when combined with Jones' criminal history category of VI, produced an advisory imprisonment range of 210 to 262 months.

Jones objected to the enhancements to his offense level. Following two days of evidentiary hearings and after holding oral argument, the District Court sustained in part the objection to the calculation of loss. Specifically, the District Court calculated the loss at $1,374,000 by attributing to Jones only 2,748 access devices. The District Court based this modification on the government's evidence of unique account numbers taken from skimmers and found on business receipts and records obtained during the search of the Alden Street location.[2] *United States v. Jones*, 557 F. Supp. 2d 630, 640 (E.D. Pa. 2008).

---

[1](...continued)
the total unique credit card numbers found at the Alden Street and Girard Avenue locations (6,700) by $500 to determine an aggregate loss of $3,350,000. The sentencing guidelines provide an 18-level enhancement for loss between $2,500,000 and $7,000,000. U.S.S.G. § 2B1.1(b)(1)(J).

[2] The District Court held that "every number found on any receipt or business record, every number downloaded from a skimmer, and every number, whether authentic or fictitious, gleaned from tipping foil, constitutes an access device." *United States v. Jones*, 557 F. Supp. 2d 630, 640 (E.D. Pa. 2008). Because the government only itemized numbers downloaded from the skimmers or found on receipts and account records seized from the Alden Street residence, the District Court excluded from its loss calculation account numbers that were written on pieces of paper, inscribed on credit cards, or found

(continued...)

The District Court further found that Jones should be held responsible for all the access devices found at the Alden Street address, concluding that under the "Relevant Conduct" provision of the sentencing guidelines, U.S.S.G. § 1B1.3(a)(1), Jones both aided and abetted Morgan's criminal conduct at this location and was a joint participant with Morgan in the criminal activities that occurred there. *Jones*, 557 F. Supp. 2d at 641-42. The loss calculation called for an offense level enhancement of 16.[3] U.S.S.G. § 2B1.1(b)(1)(I). Finally, the District Court overruled the objections to the sophisticated means and obstruction of justice enhancements as well as the objection to the denial of a three-level reduction for acceptance of responsibility. Because the government elected not to pursue an enhancement for number of victims under U.S.S.G. § 2B1.1(b)(2), the District Court did not adopt the probation officer's recommendation on this point. As a result, the District Court calculated a total offense level of 26, producing an advisory guideline range of 120 to 150 months.

On May 30, 2008, Jones was sentenced to 144 months in prison and three years of supervised release. He was also ordered to pay restitution in the amount of $311,575.35. Jones timely filed a notice of appeal on June 5, 2008.

---

[2](...continued)
on tipping foil, reasoning that it had "no way of knowing how many numbers were found written on paper, and how many were taken from tipping foil or credit cards." *Id.* at 640 n.15.

[3]Jones contended that he should be held accountable for approximately 1,000 access devices, producing a loss of about $500,000 and a 14-level enhancement in his offense score. *United States v. Jones*, 557 F. Supp. 2d 630, 638 (E.D.Pa. 2008).

On June 17, 2008, Morgan was sentenced by a different judge, the Honorable

William H. Yohn, Jr., to a prison term of 75 months and three years of supervised release.

Morgan's sentencing was held in open court, but the transcript was later sealed. On

July 9, 2008, Jones, through his lawyer, wrote a letter requesting that Judge Yohn unseal

the sentencing transcript. This request was rejected on July 18, 2008, and a motion for

reconsideration was denied on August 4, 2008. Jones did not separately appeal Judge

Yohn's decisions refusing to grant him access to the transcript of Morgan's sentencing.

## II.

Jones challenges his sentence on several grounds. He claims the District Court

erred in its determination of his offense level by: (1) finding he willfully and materially

obstructed justice; (2) denying him acceptance of responsibility; (3) computing the total

amount of loss; (4) attributing the full amount of loss to him; and (5) assessing an

enhancement for use of sophisticated means in this criminal enterprise. He also

challenges Judge Yohn's refusal to grant him access to Morgan's sentencing transcript,

thus purportedly impairing his ability to present a disparity in sentencing argument under

18 U.S.C. § 3553(a)(6). Each contention will be addressed seriatim.

## III

### 1.

Section 3C1.1 of the sentencing guidelines provides for a two-level upward

adjustment where "the defendant willfully obstructed or impeded, or attempted to obstruct

7

or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction." Application Note 4(h) to U.S.S.G. § 3C1.1 states that "providing materially false information to a probation officer in respect to a presentence or other investigation" constitutes obstruction of justice.

It is undisputed that Jones failed to disclose his ownership of the 5359 Grays Avenue property when he submitted his Net Worth Statement. The District Court carefully considered Jones' arguments that the non-disclosure was not willful. As to Jones' explanation that he did not regard himself as the legal owner of the property at the time he completed the Net Worth Statement because the deed had not been recorded at that time, the District Court reasonably concluded that Jones was not credible both because recording of the deed is not essential to establish legal ownership as well as because Jones was required to identify not only property that he owned, but also property that he controlled, and Jones plainly controlled the Grays Avenue property.

Jones' arguments that he disclosed his ownership of the property through statements he made to a Pre-Trial Services Officer and to a Secret Service agent were likewise reasonably rejected. As the District Court observed, the fact that Jones had told the Pre-Trial Services Officer and the Secret Service agent that he operated the bar located at this address is not tantamount to an admission of ownership of the real estate. Nor does the fact that it was Jones who consented to a search of the Grays Avenue premises preclude a finding that the failure to mention the property on the Net Worth

8

Statement was deliberate. Indeed, Jones' contention that he did not list the property because he had not recorded the deed shows that the omission was willful. Moreover, contrary to Jones' assertions, his failure to disclose all liabilities, including real estate tax liabilities on the property in question, reinforces the conclusion that the omission of this parcel was willful.

We disturb a District Court's factual findings only for clear error. *United States v. Napier*, 273 F.3d 276, 278 (3d Cir. 2001); *United States v. Powell*, 113 F.3d 464, 467 (3d Cir.1997) (citing *United States v. Belletiere*, 971 F.2d 961, 964 (3d Cir.1992)). The District Court's determination that Jones willfully failed to disclose the ownership of the Grays Avenue property is not clearly erroneous.

Furthermore, the District Court did not err in finding that the fact of ownership of the Grays Avenue property was material. Application Note 6 to U.S.S.G. § 3C1.1 defines "material" information as "information that, if believed, would tend to influence or affect the issue under determination." Ability to pay a fine or satisfy a restitution obligation is an issue under determination in a sentencing proceeding involving a financial crime. As we explained in *United States v. Cusumano*, 943 F.2d 305, 316 (3d Cir. 1991), "[a] statement to a probation officer concerning one's financial resources will obviously affect the officer's determination of ability to pay." In this case, the restitution obligation was $311,575.35. Ownership of the Grays Avenue property, even at the value ascribed to the property by Jones of $16,500, is plainly material to a determination of the ability to pay

9

restitution. The fact that the District Court determined that Jones did not have the ability to pay a fine does not alter this conclusion. Having concluded that the omission of the Grays Avenue property was willful, the District Court had ample reason for finding the omission material. *See Cusumano*, 943 F.2d at 315 (finding no error in the district court's determination that defendant's false statement to probation officer regarding the value of stock he owned was a materially false statement).

2.

Application Note 4 to the acceptance of responsibility provision of the sentencing guidelines, § 3E1.1, cmt. n.4, provides that "[c]onduct resulting in an enhancement under § 3C1.1 (Obstructing or Impeding the Administration of Justice) ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct." The Application Note also recognizes that "[t]here may . . . be extraordinary cases in which adjustments under both §§ 3C1.1 and 3E1.1 may apply." U.S.S.G. § 3E1.1, cmt. n.4. The defendant bears the burden of establishing by a preponderance of the evidence that an offense level reduction is warranted, and we review the denial of acceptance of responsibility credit under a clearly erroneous standard. *United States v. Muhammad,* 146 F.3d 161, 167 (3d Cir. 1998).

Jones has not pointed to any extraordinary circumstances meriting a reduction in his offense level for acceptance of responsibility. Even though Jones pleaded guilty, the District Court acted well within its ample discretion in determining that providing

10

materially false information to the Probation Office was inconsistent with acceptance of responsibility.

3.

The District Court was required to determine the number of "unauthorized access devices" and "counterfeit access devices" attributable to Jones in order to determine the amount of loss for sentencing purposes. *See* U.S.S.G. § 2B1.1, cmt. n.3(F)(i). Jones argues that the District Court erred in determining that the definition of "access device" in 18 U.S.C. § 1029(e)(1) should be construed broadly to include credit cards with expired or randomly generated numbers, credit cards with no information encoded in the magnetic strip that could serve as backup forms of identification, credit cards missing the security code (which may be used on the computer or over the phone), and randomly generated account numbers listed on pieces of paper. He claims that such credit cards and fictitious account numbers are not "access devices" as defined by Section 1029(e)(1) because they cannot be used to obtain goods, services, or other things of value.

As set forth in 18 U.S.C. § 1029(e)(1):

> [T]he term "access device" means any card, plate, code, account number, electronic serial number, mobile identification number, [or] personal identification number . . . that can be used, alone or in conjunction with another access device, to obtain money, goods, services, or any other thing of value, or that can be used to initiate a transfer of funds (other than a transfer originated solely by paper instrument).

Agent McDowell testified that although nearly 7,000 account numbers were identified from credit cards, records, pieces of paper, and other items seized during the

11

search of both the Alden Street and Girard Avenue properties, he was able to create a subset of 2,748 unique account numbers from store receipts, Comcast records, and skimmers seized during the search of the Alden Street location. These account numbers had the requisite indicia of being capable of use to obtain things of value because they had either been used for that purpose (as evidenced by the receipts and Comcast records) or had been extracted from the magnetic strip on credit cards by skimmers. Although the District Court found that the term "access device" could include all credit cards found during the searches, including those that had been inscribed with fictitious or expired account numbers, its loss calculation was limited to the smaller subset of account numbers that were capable of being used to obtain goods, services, or other things of value. Contrary to Jones' assertion, the government was not required to present evidence from banks and other financial institutions that the account numbers had been wrongly appropriated or could actually be used to acquire things of value. The government simply had to show that the account numbers were capable of obtaining things of value, and the evidence it presented with respect to the 2,748 account numbers that the District Court determined to be "access devices" for loss calculation purposes was sufficient. Thus, the District Court did not err in calculating loss for purposes of determining the offense level in this case.

4.

We review the District Court's allocation of loss to Jones based on relevant conduct for clear error. *See United States v. Wise*, 515 F.3d 207, 217 (3d Cir. 2008); *United States v. Perez*, 280 F.3d 318, 352 (3d Cir. 2002). Jones argues that the District Court erred in finding him responsible for the entire loss under U.S.S.G. § 1B1.3(a)(1)(A) (relevant conduct for sentencing purposes includes all acts and omissions aided and abetted by the defendant) and U.S.S.G. § 1B1.3(a)(1)(B) (relevant conduct in the case of jointly undertaken criminal activity "includes all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity"). Jones contends that his operation was sufficiently distinct from Morgan's enterprise that he can neither be regarded as an "aider and abetter" of Morgan nor a joint participant with Morgan for purposes of attributing to Jones access devices that Morgan created.

The evidence before the District Court indicated that Jones and Morgan equally divided most of the expenses and shared raw materials, facilities, and overhead costs. They also jointly set $100 as the minimum price for counterfeit credit cards, jointly ordered skimmers from the internet, and occasionally shared credit card numbers. Moreover, Jones knew he and Morgan were engaged in a fraudulent scheme. This evidence is sufficient to demonstrate a joint undertaking under U.S.S.G. § 1B1.3(a)(1)(B) so as to hold Jones responsible for the entire amount of loss attributable to the operations at the Alden Street location. *See United States v. Duliga*, 204 F.3d 97, 101 (3d Cir. 2000)

13

(in scheme involving multiple telemarketers, the total loss was attributed to defendant, even though his own telemarketing efforts created only part of the loss, because he jointly undertook to produce false application fees, used the same script as and worked along side other telemarketers, and was aware of the company's fraudulent nature and the scope of its operations).  Moreover, as the District Court correctly stated, "Jones' decision to help pay for the rent, machinery and upkeep, regardless to what extent, and his decision to install the software necessary for Mr. Morgan to manufacture counterfeit access devices with the knowledge that Morgan was engaged in criminal activity, renders Jones liable for those crimes [as an aider and abetter] under § 1B1.3(a)(1)(A)." *Jones*, 557 F. Supp. 2d at 641.  Thus, no error occurred in attributing the entire loss to Jones for purposes of calculating his offense level.

5.

In assessing a two-point enhancement for sophisticated means under U.S.S.G. § 2B1.1(b)(9)(C), the District Court considered the following: "(1) the use of multiple computers, scanners, card printing machines, skimmers, and an embossing machine; (2) the use of specialized and/or highly technical software; (3) multiple locations (at least five) operated by two parties; and (4) a vast number of devices found (6700)." *Jones*, 557 F. Supp. 2d at 643-44.  The sophisticated means enhancement applies to "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense."  U.S.S.G. § 2B1.1, cmt. n.8(B). Considering the evidence

cited by the District Court, coupled with Agent McDowell's testimony that it takes substantial expertise to operate the equipment and software necessary to create fraudulent credit cards, it is clear that the District Court had an ample evidentiary foundation for determining that Jones deserved a sophisticated means enhancement. *See United States v. Vaughn*, 159 F. App'x 287 (2d Cir. 2005) (finding sophisticated means in the manufacturing of counterfeit driver's licenses).

IV.

In addition to challenging the determination of his offense level, Jones claims that the decisions of Judge Yohn denying him access to Morgan's sentencing transcript wrongfully impaired his ability to pursue an unreasonable disparity in sentencing argument under 18 U.S.C. § 3553(a)(6) (sentencing court should consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct"). Morgan, however, was sentenced after Jones, so it is not clear how the District Court in this matter could have considered the issue of sentencing disparity vis a vis Morgan.

In any event, Judge Yohn's refusal to unseal Morgan's sentencing transcript in *United States v. Morgan*, Cr. No. 06-164, and subsequent denial of Jones' motion for reconsideration, are not properly before us in this matter. Jones may only appeal Judge Yohn's decision in the present action if he has no other avenue of appeal. *See In re Madden*, 151 F.3d 125, 127 (3d Cir. 1998). Judge Yohn's decision was appealable in the

15

matter over which he presided because "an order granting or denying access to portions of [a] trial record is appealable as a final order pursuant to 28 U.S.C. § 1291." *United States v. Raffoul*, 826 F.2d 218, 222 (3d Cir. 1987). Jones did not appeal Judge Yohn's rulings, and thus the correctness of denying access to the Morgan sentencing transcript is not properly before us.

V.

For the foregoing reasons, we will affirm the District Court's judgment and sentence.