NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-3607
_____

UNITED STATES OF AMERICA

v.

LUIS ENRIQUE TORO
Appellant
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(DC No. 08-CR-194)
District Judge:  Honorable Sylvia H. Rambo
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
January 6, 2011

BEFORE:  AMBRO, FISHER, *Circuit Judges*, and SÁNCHEZ, *District Judge*[*]

(Opinion Filed:  January 10, 2011)
_____

OPINION OF THE COURT
_____

SÁNCHEZ, *District Judge*.

Appellant Luis Toro pled guilty to possession with intent to distribute and distribution of

fifty grams or more of cocaine and cocaine base (crack) in violation of 21 U.S.C. § 841(a)(1).

Following a hearing to determine the quantity of drugs possessed and distributed by Toro, the

---

[*] Honorable Juan R. Sánchez, District Judge of the United States District Court for the Eastern District of Pennsylvania, sitting by designation.

District Court found 28.35 grams of cocaine and 198.45 grams of crack cocaine were attributable to Toro, and sentenced him to 151 months' imprisonment. Toro appeals his sentence, arguing the District Court erred: (1) in adopting the guideline calculation in the Presentence Investigation Report (PSR); (2) in enhancing his offense level for obstruction of justice; (3) by not granting him a departure for acceptance of responsibility; and (4) by failing to reduce his sentence pursuant to either United States Sentencing Guidelines (U.S.S.G.) § 5C1.2 or 18 U.S.C. § 3553(f). For the reasons that follow, we affirm the sentence imposed by the District Court.

I.

Because we write exclusively for the parties, we set forth only the facts and procedural history relevant to our decision.

On January 15, 2009, Toro pled guilty to possession with intent to distribute and distribution of crack cocaine and cocaine between October 26, 2007, and May 8, 2008, in violation of 21 U.S.C. § 841(a)(1). In the PSR, the probation officer calculated Toro's base offense level at thirty-six, pursuant to U.S.S.G. § 2D1.1, based on an estimate Toro possessed an amount of crack cocaine and cocaine hydrochloride equivalent to 62,908.02 kilograms of marijuana. (App. 21.) The probation officer also applied a two-level enhancement for obstruction of justice, leading to a total offense level of thirty-eight.

Toro disputed the drug weight amount calculated in the PSR, and the District Court held a hearing to determine the appropriate drug amount attributable to Toro. At the hearing, the Government presented the testimony of four witnesses: Special Agent John Langan of the Drug Enforcement Agency (DEA); Supervisor Todd Johnson of the Dauphin County Pennsylvania Drug Task Force; and Daryl London and Clifford Bradley, two of the four cooperating witnesses

who worked with Langan and Johnson during the investigation of Toro.[1] Following the hearing, the District Court determined London and Bradley were not credible and neither credited their testimony nor included their estimates of Toro's drug possession in calculating the drug amount attributable to Toro. (App. 36.)

The District Court did credit the testimony of Langan and Johnson, including Johnson's testimony that a conversation between Toro and a third cooperating defendant, Robert Lee, revealed Toro sold Lee four ounces of crack cocaine. In total, the District Court concluded Toro was responsible for possession of an amount of narcotics equivalent to 3,974.67 grams of marijuana, thereby calculating Toro's base offense level as thirty-four, with a Guidelines range of 151-181 months. (App. 35.) At Toro's subsequent sentencing hearing, the District Court asked Toro's counsel whether he wished to make any additional argument regarding the drug quantity calculation. Counsel responded he had no further arguments and Toro "accept[ed] the Court's ruling in regards to the weight." (App. 135.)

Toro's counsel maintained his objection to the two-level sentencing enhancement assessed for obstruction of justice and requested a downward adjustment for Toro's acceptance of responsibility and a further downward adjustment under the "safety valve" provision of either U.S.S.G. § 5C1.2 or 18 U.S.C. § 3553(f). Because the District Court found the Government established by a preponderance of the evidence that Toro had lied about his identity, the District Court held Toro had obstructed justice and was therefore ineligible for an acceptance of responsibility reduction. The District Court further concluded Toro was not eligible for the

---

[1] London and Bradley both testified they purchased cocaine from Toro, and observed him cooking crack cocaine and delivering crack cocaine to other individuals. Because both witnesses admitted their testimonies materially differed from the statements they originally gave to law enforcement agents regarding Toro, the District Court found London and Bradley were not reliable witnesses and did not attribute to Toro the drug amount either witness claimed to have purchased from him, or the amounts they claimed to have seen him transfer to others or cook.

safety valve reduction because he had not been completely truthful about his identity and therefore neither the Government nor the probation officer could verify Toro's identity or confirm his criminal record. The District Court sentenced Toro to 151 months of imprisonment, a sentence at the bottom of the Guidelines range dictated by his offense and criminal history levels.

## II.

The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742. We review factual findings at sentencing for clear error, and exercise plenary review over the District Court's interpretation and application of the Sentencing Guidelines. *United States v. DeJesus*, 347 F.3d 500, 505 (3d Cir. 2003). We review a district court's decision whether to depart from the appropriate guidelines range for abuse of discretion. *Gall v. United States*, 552 U.S. 38, 56 (2007).

## III.

Toro first argues the District Court erred by adopting the guideline calculation of the PSR, which he contends is based on a drug weight calculation which is not supported by substantial evidence.[2] Toro concedes he sold 28.35 grams of cocaine and a total of 85.05 grams of crack cocaine, but disputes the additional four ounces (113.4 grams) of crack cocaine the District Court found he sold to Lee on March 27, 2008. Toro argues the Government failed to connect him to Lee's four-ounce purchase of crack cocaine and asserts the District Court erred by crediting Lee's testimony despite evidence Lee had dealt dishonestly with law enforcement agents.

---

[2] In fact, the District Court did not adopt the PSR's drug weight calculation, which set the offense level pursuant to U.S.S.G. § 2B1.1 at thirty-six. Instead, the District Court held a hearing to determine the appropriate drug weight attributable to Toro, and it is the subsequent independent determination to which Toro truly objects.

Factual findings at sentencing, including drug quantity determinations, are reviewed for clear error, *United States v. Williams*, 917 F.2d 112, 113 (3d Cir. 1990), so "we will not disturb [a district court's] determination of the amount of drugs attributable to a particular defendant unless that determination is clearly erroneous." *United States v. Edmonds*, 52 F.3d 1236, 1244 (3d Cir. 1994), *vacated on other grounds*, 80 F.3d 810 (3d Cir. 1996). To determine whether the District Court erred, we must decide if the facts at sentencing were proven by the preponderance of evidence which possessed "sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3(a); *United States v. Miele*, 989 F.2d 659, 663 (3d Cir. 1993) (citations omitted) (explaining reliability is the threshold requirement for admissibility at sentencing). In determining the drug weight attributable to a defendant, a district court "may rely on intercepted drug conversations to estimate drug quantities." *United States v. Gibbs*, 190 F.3d 188, 203 (3d Cir. 1999) (citations omitted).

Review of the testimony in this case reveals the District Court's finding that an additional four ounces of crack cocaine was attributable to Toro was not clearly erroneous. The District Court heard testimony from Dauphin County Drug Task Force Supervisor Todd Johnson, who described his investigation of Toro, including his interactions with cooperating defendant Robert Lee. Johnson stated Lee and Toro were friends and associates in the crack cocaine distribution business who had met on several occasions to exchange money and narcotics. (App. 63.) Under Johnson's supervision, Lee made two purchases of crack cocaine from Toro. In the first transaction, he purchased two ounces of crack cocaine on March 25, 2008, while wearing a device which recorded the transaction. (App. 64.) Two days later, Lee and Toro arranged another narcotics sale. Johnson observed Lee's outdoor meeting with Toro and saw the two exchange money. At the time, Lee told Johnson he had purchased two ounces of crack from

5

Toro. Johnson later discovered Lee had lied about this transaction and had actually purchased four ounces of crack cocaine from Toro, turning two ounces over to law enforcement officers and keeping two ounces for himself. Johnson learned of Lee's deception while listening to a third recorded meeting between Lee and Toro, in which Toro told Lee that Lee owed him for four ounces of crack purchased at their prior meeting. Johnson confronted Lee, and Lee admitted he had purchased four ounces of cocaine from Toro on March 27, 2008. Johnson testified to these facts at the hearing.

The District Court did not clearly err in finding, based on Johnson's testimony, that Toro sold Lee four ounces of crack cocaine on March 27, 2008. Although Lee's reliability as a cooperating witness was compromised when he hid two ounces of narcotics from Johnson, this act had no bearing on the reliability of Johnson's testimony that he overheard Toro admit to selling the drugs and Lee admit to purchasing them.[3] At sentencing, a District Court may rely on hearsay evidence to determine the amount of drugs involved in an offense, so long as such hearsay has sufficient indicia of reliability. *United States v. Sciarrino*, 884 F.2d 95, 97 (3d Cir. 1989); *see also* 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."). Because Lee's statement had the tendency to expose him to criminal liability, and would therefore qualify as an exception to the hearsay rule, Johnson's testimony regarding such statement contained sufficient indicia of reliability to be accepted by the District Court. The District Court's decision is supported by a preponderance of the evidence; therefore we affirm the drug weight calculation attributed to Toro.

---

[3] Lee was not available to testify at Toro's sentencing hearing because he is deceased.

Toro's remaining challenges to his sentence all relate to the District Court's determination that Toro was concealing his true identity. In the PSR, Toro's probation officer noted that, "from the outset of th[e] case, authorities doubted the accuracy of the defendant's identity." (App. 18.) Toro reported his full name as Luis Enrique Toro. He provided the Probation Office with a social security number, and stated he was born to his mother, Lillian Toro, in Ponce, Puerto Rico, on August 20, 1976. When a criminal record check was conducted using this name, social security number, and date of birth, however, records maintained by the Federal Bureau of Investigation (FBI) revealed at least two other individuals using this identity: (1) an individual who was arrested in Missouri (MO-Toro) and (2) an individual arrested in Puerto Rico (PR-Toro). *Id.* The probation officer concluded the Toro involved in this case (PA-Toro) was not either of these individuals because MO-Toro was arrested in Missouri after PA-Toro was incarcerated for the instant offense, and a photographic comparison of PR-Toro and PA-Toro showed they were two different men. (App. 18-9.)

The Government asserts PR-Toro is the "real" Luis Enrique Toro. His background was verified by the Puerto Rico Pretrial Services Office and his mother, and was further confirmed by fingerprints which were accepted by the FBI. (App. 19.) In contrast, PA-Toro has not provided the Pretrial Services Office with contact information for a single person who could corroborate his identity. Although he stated his mother's name is Lillian, he told his probation officer he did not know where she lived and had not had contact with her since he was eleven years old. *Id.* PA-Toro further said he lived with his girlfriend, Yavonka Abreu, but his probation officer was unable to contact Abreu using the phone number PA-Toro provided. (App. 22.) Finally, PA-Toro's fingerprints have been repeatedly rejected by the FBI because his fingers have been

7

altered and/or mutilated.[4]   (App. 18).   Based on the totality of this evidence, the District Court concluded PA-Toro was not who he claimed to be.   Accordingly, the District Court enhanced Toro's sentence for obstruction of justice, denied his request for an acceptance of responsibility decrease, and held that he was ineligible for the safety valve provision of either the Guidelines or 18 U.S.C. § 3553(f).   Toro asserts these decisions were erroneous.

We first review the District Court's decision to give Toro a two-level increase pursuant to U.S.S.G. § 3C1.1, which authorizes such an enhancement if a defendant willfully obstructs or impedes the investigation, prosecution, or sentencing of his offense.   This Guideline is applicable where the defendant, *inter alia*:   (1) "provid[es] materially false information to a judge or magistrate," § 3C1.1. cmt. n.4(f); (2) "provid[es] materially false information to a probation officer in respect to a presentence or other investigation for the court," *id.*; *see also United States v. Magana-Guerrero*, 80 F.3d 398, 401 (9th Cir. 1996); or (3) removes or modifies his fingerprints.

In the instant case, the Government proved by a preponderance of the evidence Toro did not provide truthful information about his identity to the Probation Office or the District Court and also proved Toro's fingerprints had been deliberately removed or modified.   These acts were calculated to disguise Toro's true identity and to make it difficult to track and monitor him once he is released from prison, especially given that the same identity he claims as his own is currently being used by at least two other individuals.   Accordingly, the District Court did not clearly err in concluding Toro had lied about his identity, and application of the obstruction of justice enhancement was appropriate.

---

[4] Moreover, although there is no direct evidence PA-Toro purchased or adopted the identity of PR-Toro, PR-Toro was convicted in the Western District of Virginia for conspiring to traffic identity documents, including Puerto Rican birth certificates and social security cards, to illegal aliens.  (App. 20.)

Toro next argues the District Court erred by declining to reduce his offense level for his acceptance of responsibility. Section 3E1.1 permits a two-level decrease if a defendant "clearly demonstrates acceptance of responsibility for his offense." U.S.S.G. § 3E1.1(a). Such a decrease is not available, however, for a defendant who pleads guilty without affirmatively demonstrating "a genuine show of contrition." *United States v. Muhammad*, 146 F.3d 161, 168 (3d Cir. 1998). It is likewise not available for a defendant who has received an obstruction of justice enhancement because obstructionist behavior "ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct." *See* § 3E1.1, cmt. n.4. The defendant bears the burden of establishing by a preponderance of the evidence that the offense level reduction he seeks is warranted. *Muhammad*, 146 F.3d at 168. Therefore, although Toro pled guilty to the charged offense and submitted a letter to the District Court expressing his remorse, given the false information he provided regarding his identity, the District Court acted within its discretion to determine Toro had not fully accepted responsibility for his actions and was therefore ineligible for a sentence reduction under this provision.

Finally, Toro argues the District Court erred by failing to reduce his sentence pursuant to the "safety valve" provided by U.S.S.G. § 5C1.2 or 18 U.S.C. § 3553(f). To be eligible for the safety valve, a defendant must establish that:

> (1) [he] does not have more than 1 criminal history point, as determined under the sentencing guidelines;
> (2) [he] did not use violence or credible threats of violence or possess a firearm or other dangerous weapon . . . in connection with the offense;
> (3) the offense did not result in death or serious bodily injury to any person;
> (4) [he] was not an organizer, leader, manager, or supervisor of others in the offense . . . and was not engaged in a continuing enterprise . . . ; and
> (5) not later than the time of the sentencing hearing, [he] has truthfully provided to the Government all information and evidence [he] has concerning the offense[.]

9

18 U.S.C. § 3553(f). Once again, Toro's eligibility for a sentence reduction was thwarted by his failure to provide candid, verifiable information about his identity to his probation officer, the Government, or the District Court. Accordingly, the District Court ruled Toro was not eligible for the safety valve reduction because he failed to provide truthful information and because the District Court could not determine whether he truly had only one criminal history point, as his identity could not be verified. In light of the evidence presented by the Government of multiple "Luis Toros" who used the same identity, the District Court's decision to deny Toro a safety valve reduction was not made in error.

IV.

For all of the reasons set forth above, we affirm the sentence imposed by the District Court.