NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-3610
_____

UNITED STATES OF AMERICA

v.

ROBERT B. BLAKESLEE,
                              Appellant
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 07-cr-00483-001)
District Judge:  Hon. Yvette Kane
_____

Submitted Under Third Circuit LAR 34.1(a)
April 14, 2011

Before:   FISHER, JORDAN and COWEN, *Circuit Judges*.

(Filed: April 15, 2011)
_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

Appellant Robert B. Blakeslee ("Blakeslee") appeals both the decision of the

United States District Court of the Middle District of Pennsylvania rejecting his plea

agreement and the Court's subsequent order sentencing him to the upper end of the

United States Sentencing Guidelines ("Guidelines" or "U.S.S.G.") range without

according him any reduction for acceptance of responsibility. For the following reasons, we will affirm.

## I. Background

The South Williamsport Police had information that someone was illegally entering the premises of a remotely operated radio station and using its computer equipment to download child pornography. With the station owner's permission, the police installed a silent alarm that would activate if anyone entered the station. On April 11, 2006, the police responded to that alarm and arrested Blakeslee as he exited the premises. When they arrested him, the police found Blakeslee in possession of a thumb drive and a USB cable. Search warrants were obtained for the thumb drive and for a computer and floppy disks found in Blakeslee's residence, as well as for a computer he was having repaired at a local computer store. The radio station owner permitted the authorities to search the station computer for evidence. Those searches revealed Blakeslee's use of the radio station's computer to access and download over a thousand images of pornography; there were dozens of images of child pornography on the thumb drive, including several that were exact matches to images found on the station computer's hard drive; the computer in Blakeslee's residence contained 1,105 child pornography images, some of which were, again, exact matches to files on the computer hard drive from the station; there were over one hundred child pornography images on the floppy disks in Blakeslee's home, many of which matched images on the computer found in his home; and there were child pornography images on the computer that Blakeslee had left for repair at a computer store.

In December 2007, Blakeslee was indicted for receipt of child pornography in violation of 18 U.S.C. §§ 2252A(a)(2) and 2252A(b)(1) ("Count 1"), and two counts of possession of child pornography in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and 2252A(b)(2) ("Counts Two and Three"). Subsequently, the government and Blakeslee entered a plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) whereby Blakeslee agreed to plead guilty to Count One of the Indictment, admitting that he knowingly received child pornography and material containing child pornography that had been shipped and transported in interstate and foreign commerce. Under that agreement, the government stipulated that Blakeslee would serve the mandatory minimum sentence of fifteen years' imprisonment, to be followed by a term of supervised release for life. Pursuant to the agreement, Blakeslee was free to "withdraw from the agreement and withdraw any guilty plea entered pursuant to [that] agreement" if the sentencing court refused to accept the plea or imposed a sentence greater than that agreed to by the parties. (App. at 26.)

In July 2009, Blakeslee appeared before a Magistrate Judge and, after a full colloquy, pled guilty pursuant to the plea agreement. The Magistrate Judge issued a Report and Recommendation ("R & R") recommending that the District Court "enter an Order adjudging the defendant guilty of the offense." (*Id*. at 8-9.) The Magistrate Judge also ordered a presentence investigation and the preparation of a presentence investigation report ("PSR").

Based on the R & R, the District Court accepted Blakeslee's guilty plea and scheduled a sentencing hearing. At the hearing, the District Court advised the parties

3

that, upon review of the PSR, it was "going to reject the plea bargain." (D.I. No. 109 at 2-3.)[1] The District Court noted that it had previously sentenced Blakeslee and that he had appeared before the Court on multiple occasions for violations of his supervised release. The Court noted that it was "not at all confident that a 15-year sentence, [to which the parties agreed, met] the sentencing objectives." (*Id*. at 7) The Court also expressed doubt that Blakeslee, who would, if he served 15 years in prison, be 80 years of age when released, would cease his lifelong pattern of "prowling, of stalking young girls, and of accessing child pornography sites," a pattern which had, with time, "become increasingly dangerous." (*Id*.) After explaining its rejection of the plea agreement, the Court continued:

> Mr. Blakeslee, what that means to you is that you must now discuss with [your attorney] the options available to you. You can stand by your guilty plea and understand that the Court will sentence you to any lawful sentence the Court might choose to impose and that that sentence might be a greater sentence than that which you bargained for. If you do not wish to exercise that option, then you'll have the option of withdrawing your guilty plea and setting your case for trial. You need not decide that today.

(*Id*. at 9.) Through his counsel, Blakeslee ultimately requested a jury trial after the District Court indicated that it did not want its "discretion limited" when an amended plea agreement with another binding sentence was offered to the Court. (D.I. No. 110 at 3.)[2]

---

[1] Citations to "D.I. No. 109 at __" reference Item No. 109 on the District Court's docket and are to the transcript of the September 29, 2009 hearing at which the District Court rejected the plea agreement between Blakeslee and the government.

[2] Citations to "D.I. No. 110 at __" reference Item No. 110 on the District Court's docket and are to the transcript of the October 8, 2009 hearing at which Blakeslee chose to go to trial.

4

At trial on the three original charges, the government sought to introduce evidence that some of the images found in Blakeslee's possession matched images from a "known series" of child pornography, meaning images that had previously been confirmed to contain the images of actual children as opposed to, for example, young looking adults posing as children. (App. at 143, 374.) That evidence included Exhibit 40, a report from the National Center for Missing and Exploited Children ("NCMEC") indicating that 34 of the images found in Blakeslee's possession were matches to "known series" images. That exhibit also confirmed an interstate nexus in the case because the children in the "known series" were "literally from all around the world." (*Id*. at 160.) To authenticate Exhibit 40, the government relied upon the testimony of Special Agent Kyle, an instructor at the FBI's investigative training unit at Quantico, Virginia. Kyle's testimony consisted of: 1) a description of his over 20 years of experience investigating child pornography cases, resulting in familiarity with over "1500 titled subjects" (*Id*. at 141); 2) a synopsis of his knowledge of the procedures at NCMEC and his past involvement with that agency, which included receipt of training at NCMEC, providing the NCMEC with "known series" information, and teaching NCMEC personnel about newly discovered "known series" (*Id*. at 143-44, 241, 249-52); 3) an assertion that, in other cases, he had been called to testify regarding known series in which he had participated in recovering the children portrayed, as well as about other known series based on his "knowledge base" and "extensive experience" in the area of child pornography (*Id*. at 143); and 4) a claim that he had previously testified as an expert on every "known series" at issue in the Blakeslee case (*Id*. at 251). Blakeslee objected to Exhibit 40 as

5

inadmissible hearsay, but the District Court determined that Kyle's testimony was sufficient to establish its admissibility "under the business record exception." (*Id*. at 252.)

Blakeslee was found guilty of all three counts. Later, on April 29, 2010, a PSR was prepared and provided to the parties but, based on Blakeslee's objections to the PSR, a PSR with an addendum was provided to the parties on July 12, 2010. That addendum reflected Blakeslee's argument that he was entitled to a two-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1 because he acknowledged involvement in the offense and only went to trial to raise a technical argument rather than to assert innocence. The addendum also showed that the probation office stood behind its conclusion that Blakeslee should not receive a two-level reduction in his Guidelines offense level because he had tried to plead guilty "in the context of a Rule 11(c)(1)(C) wherein he attempted to dictate the sentence imposed by the Court" and, once that plea and associated 15-year sentence was rejected, he decided to go to trial. (PSR Addendum ¶ 13.)

At the sentencing hearing, Blakeslee again argued that he was entitled to a two-level reduction for acceptance of responsibility. The District Court determined that Blakeslee had not accepted responsibility and should not receive credit for such an acceptance. Blakeslee also requested a variance under U.S.S.G. § 5H1.4, due to his alleged vulnerability in prison stemming from his age, illnesses, and the nature of his charge. In response, the District Court noted Blakeslee's mental health diagnosis and determined that his bipolar disorder neither excused his conduct nor "warranted either a

6

departure or a variance from the guidelines." (App. at 351.) The Court also found that Blakeslee's physical health problems were typical of his age and that those, combined with his age, did not "make him extremely at risk any more than any other defendant." (*Id.* at 336.) To the extent that Blakeslee's argument alluded to him being at greater risk when imprisoned because of the nature of the charges of which he was convicted, the Court noted that that was "always problematic" but found that he was not at greater risk than anyone else who enters a penitentiary, institutions which, the Court noted, are "committed to rehabilitating and protecting the people in their care." (*Id.*)

Addressing "the nature and circumstances of the offense," (*Id.* at 354), the Court said that Blakeslee had been "found guilty by a jury of collecting thousands of vile images … [of children being] raped, sodomized, pillaged, and all for the personal enjoyment of viewers on the Internet." (*Id.* at 354.) The Court further noted that Blakeslee had previously been before the Court for similar illegal conduct, the difference being that the images had become more vile and more cruel.[3] The Court stated that,

---

[3] Blakeslee has a history of offenses related to children and child pornography. In 1992, he was convicted of three counts of loitering and prowling at night. The basis for those convictions included peering into the homes of young girls. In 1998, Blakeslee was also convicted of two counts of loitering and prowling at night after he was arrested for peering into a home where an eleven year-old girl and her friend were watching television.

In 1999, Blakeslee was convicted for possession of child pornography, for which he was sentenced to five years imprisonment and three years supervised release. After being released from prison, however, Blakeslee violated the conditions of his supervised release by, among other things: being found in the presence of children under the age of 18 – specifically a three-year-old girl – without being in the presence of an approved adult; possessing electronic media and computer programs and services without permission of the probations officer; using a computer with Internet access; associating without

though Blakeslee had never been convicted of violating a child, he "cannot dispute that he has followed children, attempted to lure children, and even violated the orders of [the] Court by associating with children while on supervised release." (*Id*. at 355.) The Court recognized that the Guidelines range for pornography offenses was both "harsh" and "high,"(*id.*), and that, in some instances, it was unduly so. Nevertheless, the Court rejected Blakeslee's arguments, finding that the "guidelines range sentence is necessary in this case to punish, deter, promote respect for the law, reflect the very serious nature of [Blakelee's] conduct, and protect the public from future crimes." (*Id*. at 356-57.) The Court sentenced Blakeslee to 360 months of imprisonment on Count I, and two terms of 240 months on Counts II and III, all to be served concurrently, a life term of supervised release, and a $300 special assessment.

On August 26, 2010, Blakeslee timely filed a notice of appeal.

## II. Discussion[4]

On appeal, Blakeslee argues that the District Court: 1) erred in declining to sentence him to fifteen years' imprisonment in accordance with the Rule 11(c)(1)(C) plea agreement associated with the guilty plea first accepted and then rejected by the District Court; 2) abused its discretion when, at trial, it admitted the NCMEC report; 3) committed clear error when it found that he had not accepted responsibility for his actions

authorization with an 11-year-old girl; trespassing; and attempting to lure a child. On account of those acts, Blakeslee's supervised release was revoked three times, and he was sentenced to additional terms of imprisonment.

[4] The District Court had jurisdiction pursuant to 28 U.S.C. § 3231. We have jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

such that a two-level offense reduction was applicable; and 4) abused its discretion in imposing a sentence of 360 months of imprisonment. We address each argument in turn.

A.    *The Plea*

We review for abuse of discretion the District Court's decision to reject a plea agreement. *United States v. Brown,* 595 F.3d 498, 521 (3d Cir. 2010).

Before accepting a guilty plea, a court must address the defendant in open court, inform him of and confirm his understanding of, among other things, the right to plead not guilty and the right to a jury trial and that, if the court accepts the guilty plea, he is waiving those trial rights. FED. R. CRIM. P. 11(b)(1)(A)-(N). A court must also ensure that a defendant has both knowingly and voluntarily accepted the guilty plea. FED. R. CRIM. P. 11(b)(2). Under Rule 11, a court may then "accept the agreement, reject it, or defer a decision until the court has reviewed the presentence report." FED. R. CRIM. P. 11(c)(3)(A). A district court need not accept a guilty plea and the associated agreement simultaneously. *United States v. Hyde*, 520 U.S. 670, 674 (1997). It can, instead, accept the guilty plea and later accept or reject the agreement. *Id*.

If a court ultimately rejects such a plea agreement, the court must do the following in open court:

> (A) inform the parties that the court rejects the plea agreement;
>
> (B) advise the defendant personally that the court is not required to follow the plea agreement and give the defendant an opportunity to withdraw the plea; and
>
> (C) advise the defendant personally that if the plea is not withdrawn, the court may dispose of the case less favorably toward the defendant than the plea agreement contemplated.

FED. R. CRIM. P. 11(c)(5)(A)-(C).  If a court accepts a Rule 11(c)(1)(C) plea agreement, such as the one at issue here, it is bound by the provisions of that agreement.  *United States v. Bernard,* 373 F.3d 339, 343 (3d Cir. 2004).

Blakeslee contends that, by originally accepting his guilty plea, the District Court also accepted the plea agreement's fifteen-year stipulated sentence.  Accordingly, he posits that we must vacate both the trial verdict and sentence and remand "for sentencing in accordance with the plea agreement."  (App. Br. at 15.)  He is mistaken.  The acceptance of the plea did not equate to an acceptance of the agreement.  *Hyde,* 520 U.S. at 674.  Instead, the Court was free to later reject the agreement, which it did after reviewing the PSR.  Having rejected the plea agreement, the District Court gave Blakeslee options consistent with Rule 11.  Thus, the District Court did not err in substance or procedure in rejecting the plea agreement and allowing Blakeslee to go to trial.

### B.      Admission of the NCMEC Report

We exercise plenary review of the District Court's interpretations of the Federal Rules of Evidence.  *United States v. Saada*, 212 F.3d 210, 220 (3d Cir. 2000).  If the District Court's interpretation of the relevant Federal Rules of Evidence is legally sound, we review its application of those rules, including the admission of evidence, for abuse of discretion.  *Id.*; *United States v. Tyler,* 281 F.3d 84, 98 (3d Cir. 2002).

Blakeslee argues that the District Court erred in admitting the NCMEC report because the report is hearsay and the testimony provided to support its admission as a

business record under F.R.E. 803(6) was insufficient.[5]  The NCMEC report is indeed

hearsay because it was an out-of-court statement "offered into evidence to prove the truth

of the matter asserted[,]" namely that some of the images found in Blakeslee's possession

belonged to a "known series" of child pornography images.  F.R.E. 801(c).  As such, the

NCMEC report was inadmissible unless a hearsay exception applies.  F.R.E. 801; 802.

The only exception suggested by the government was and is the business records

exception set forth in Rule 803(6).  For the NCMEC report to be admissible under the

business records exception, it must be authenticated by "the custodian [of the record] or

other qualified witness."  F.R.E. 803(6).  A qualified witness "need not be an employee

of the [record-keeping] entity so long as he understands the system" and can testify as to

the "foundational requirements of Rule 803(6)."  *United States v. Console,* 13 F.3d 641,

657 (3d Cir. 1993) (internal citations and quotations omitted.)  The foundational

requirements are:

> (1) [t]he declarant in the records had personal knowledge to make accurate statements; (2) the declarant recorded the statements contemporaneously with the actions that were the subject of the reports; (3) the declarant made

---

[5] The business records hearsay exception is stated in F.R.E. 803(6):

> A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with Rule 902(11), Rule 902(12), or a statute permitting certification, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

11

the record in the regular course of the business activity; and (4) such records were regularly kept by the business.

*Unites States v. Sokolow,* 91 F.3d 396, 403 (3d Cir. 1996).

Here, the District Court accepted the testimony of Agent Kyle as adequate to admit the NCMEC report under the business records exception. We agree with Blakeslee that that was error. Despite Agent Kyle's expertise and general familiarity with NCMEC, he neither made the record nor had the personal knowledge of its creation necessary for him to testify as to the elements required by the Rule. Therefore, admission of the NCMEC report was an abuse of discretion by the District Court.

Even so, that error was harmless. An error is harmless if it is "highly probable that the error did not affect the judgment." *Gov't of Virgin Islands v. Toto,* 529 F.2d 278, 284 (3d Cir. 1976)(citation omitted). "[W]e will affirm a District Court's evidentiary ruling, even if it is erroneous … if it is highly probable that the error[] did not affect the outcome of the case." *Hirst v. Inverness Hotel Corp.,* 544 F.3d 221, 228 (3d Cir. 2008) (internal quotation omitted).

Here, in addition to the NCMEC report, the government presented a large quantity of evidence establishing that the images were of real children and that there existed an interstate nexus in Blakeslee's case. That evidence included witness testimony as to the ages of the victims depicted and binders containing thousands of child pornography images from which the jury could determine that those images were of actual minors. [6]

---

[6] Another witness, Trooper Trusal, worked on the Blakeslee case and testified that he "wouldn't say there were any [children] over 16 … some as young as maybe seven or eight." (App. at 192.)

*See United States v. Rayl,* 270 F.3d 709, 714 (8th Cir. 2001) (concluding that the material presented included "images of prepubescent children, and the jury was free to make its own conclusion as to the age of the children depicted"). The evidence also included testimony that Blakeslee downloaded images from the Internet to the radio station computer, which established the interstate nexus requirement. *United States v. MacEwan,* 445 F.3d 237, 245 (3d Cir. 2006) (holding that "the Internet is an instrumentality and channel of interstate commerce.") The NCMEC report, then, only served to corroborate voluminous other admissible evidence reviewed by the jury. Thus, it is "highly probable" that the NCMEC report did not affect the outcome of the case, and its erroneous admission was harmless.

### C.    *Acceptance of Responsibility*

We exercise plenary review over the District Court's interpretation of the Sentencing Guidelines and review for clear error its factual findings related to applying the Guidelines. *United States v. Grier,* 475 F.3d 556, 570 (3d Cir. 2007); *United States v. Frierson,* 945 F.2d 650, 653, 655 (3d Cir. 1991). "A defendant who enters a guilty plea is not entitled to an adjustment under [U.S.S.G. § 3E1.1] as a matter of right." U.S.S.G. § 3E1.1 app. n. 3. It is Blakeslee's burden to establish by a preponderance of the evidence that he has "clearly accept[ed] responsibility for his offense." U.S.S.G. § 3E1.1(a); *see also United States v. Boone,* 279 F.3d 163, 193 (3d Cir. 2003) (noting that defendant "bears the burden of establishing … that he or she is entitled to the reduction"); *United States v. Muhammad,* 146 F.3d 161, 167 (3d Cir. 1998) (same). The sentencing

13

judge's finding with respect to acceptance of responsibility "is entitled to great deference." U.S.S.G. § 3E1.1 app. n. 5.

Blakeslee argues that he should have been granted a two-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1 because, even though he withdrew his guilty plea and chose to proceed to trial, he only did so because the District Court had rejected the plea agreement's stipulated sentence.[7] His argument is not persuasive.

Blakeslee entered a guilty plea and then, when his plea agreement was rejected, withdrew it and chose to go to trial. At trial, Blakeslee challenged some of the factual underpinnings of the charges, such as whether some images on the thumb drive and the home computer were the same, whether the images depicted actual children instead of adults who looked like children, and whether there was a possibility that someone other than Blakeslee was responsible for downloading the pornographic images seen on the radio station computer. The record suggests that Blakeslee did not accept his guilt as required by U.S.S.G. § 3E1.1 but, rather, throughout his trial attempted to cast doubt in the mind of the jurors as to whether he, in fact, had committed the charged acts. Such behavior is inconsistent with acceptance of responsibility.[8] Therefore, the District Court

---

[7] Blakeslee also contends that docket entries do not reflect that he moved to "withdraw his plea at any time" and that thus he should be awarded credit for acceptance of responsibility. This is an untenable position. Blakeslee's request for a jury trial has the same effect as withdrawing his guilty plea.

[8] Application Note 2 states that an adjustment for acceptance of responsibility:

> [I]s not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt,

14

did not err in denying Blakeslee a two-level reduction for acceptance of responsibility under U.S.S.G § 3E1.1.

### D. Reasonableness of Sentence Imposed

We review the District Court's sentencing decisions for abuse of discretion, looking first for procedural error and then examining the sentence for substantive reasonableness. *United States v. Wise*, 515 F.3d 207, 217-18 (3d Cir. 2008). With respect to sentencing-related factual findings, our review for abuse of discretion is effectively a review for clear error. *See id.* at 217 ("[I]f the asserted procedural error is purely factual, our review is highly deferential and we will conclude there has been an abuse of discretion only if the district court's findings are clearly erroneous."). A sentence will be upheld as substantively reasonable unless no other reasonable sentencing court would have imposed the same sentence for the reasons provided. *United States v. Doe*, 617 F.3d 766, 774 (3d Cir. 2010).

Blakeslee contends that the sentence imposed by the District Court was the result of procedural error because the Court failed to adequately consider the 18 U.S.C.A. § 3553(a) factors – specifically his age, mental and physical health issues, and

---

and is convicted … Conviction by trial, however, does not automatically preclude a defendant from consideration for such a reduction. In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial. This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt… .

U.S.S.G. § 3E1.1 App. n. 2. Blakeslee's contentions at trial were not limited to issues unrelated to his factual guilt.

vulnerability to abuse in prisons. He also argues that the sentence imposed was unreasonable because the Court failed to consider the relevant sentencing factors and because the Guidelines range for his type of offense is too harsh and so the District Court should have departed from the calculated range.

As an initial matter, it is uncontested that, after rejecting Blakeslee's argument that he was entitled to a reduction for acceptance of responsibility, the District Court properly calculated the Guidelines range as being 292 to 365 months' imprisonment. Furthermore, it is clear from the record that the District Court then "gave meaningful consideration to the § 3553(a) factors." *United States v. Starnes,* 583 F.3d 196, 218 (3d Cir. 2009). Specifically, the Court addressed and rejected Blakeslee's arguments for leniency based on his age and mental and physical conditions. The Court also took note of the harshness of the Guidelines range but found that, despite prior sanctions by the Court, Blakeslee's conduct had not improved, and had instead become more dangerous and vile. Thus, the Court determined that the Guidelines range was appropriate and sentenced Blakeslee at the upper end of that range to "punish, deter, promote respect for the law, reflect the very serious nature of [Blakeslee's] conduct, and protect the public from future crimes." (App. at 355-56.)

In light of the circumstances of this case, the District Court was well within its discretion in rejecting Blakeslee's arguments and in sentencing him within the Guidelines range.

16

**III.** **Conclusion**

For the foregoing reasons, we will affirm the judgment and sentence of the District Court.